IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
Columbia Division

| | |
|---|---|
| Disability Rights South Carolina, et al.,<br><br>*Plaintiffs*,<br><br>v.<br><br>McMaster, et al.,<br><br>*Defendants*. | Civil Action No.: 2:21-cv-2728-MGL<br><br>**PLAINTIFFS' CONSOLIDATED OPPOSITION TO DEFENDANTS McMASTER AND WILSON'S MOTIONS TO DISMISS** |

Plaintiffs respectfully ask the Court to deny Defendant McMaster and Wilson's Motions to Dismiss under Fed. R. Civ. P. 12(b)(1) and (6). ECF 59, 71.

## INTRODUCTION

Since suit was filed, the situation in South Carolina schools has deteriorated markedly. Over 40,000 additional South Carolina children have contracted COVID-19,[1] representing over 36 percent of new cases in the state.[2] Even before this recent surge, public health officials—including the Centers for Disease Control ("CDC"), the American Academy of Pediatrics and the American Medical Association—have urged school districts to require students, staff, and visitors to wear masks.[3] This commonsense measure has been adopted by other states and school

---

[1] *South Carolina County-Level Data for COVID-19*, SCDHEC, https://scdhec.gov/covid19/covid-19-data/south-carolina-county-level-data-covid-19 (accessed Sept. 22, 2021) (from August 26 to September 20, 2021, there were 43,608 COVID-19 cases in children aged 0-20—17,028 cases among children 0-10 and 26,580 cases among children 11-20).

[2] *Id.* (from August 26 to September 20, 2021, there have been 118,617 total COVID-19 cases in South Carolina).

[3] *Guidance for COVID-19 Prevention in K-12 Schools*, Ctrs. for Disease Control & Prevention (Aug. 5, 2021), https://www.cdc.gov/coronavirus/2019-ncov/community/schools-childcare/k-12-guidance.html ("CDC recommends universal indoor masking for all teachers, staff, students, and visitors to K-12 schools, regardless of vaccination status."); *Face Masks*,

1

districts, including the Commonwealth of Virginia, as well as most schools in North Carolina and Alabama.[4]

Unfortunately, this is not the case in South Carolina. Here, the Governor and Attorney General insist that school districts across the state cannot implement any mask requirement, citing state law Proviso 1.108. They have taken this position even when the U.S. Department of Education advised them that their conduct may violate federal law and the civil rights of children with disabilities.[5] And the Attorney General has gone even further—affirmatively suing the City of Columbia when it took steps to protect children in its schools.

---

Amer. Acad. Pediatrics, https://www.aap.org/en/pages/2019-novel-coronavirus-covid-19-infections/clinical-guidance/cloth-face-coverings/ (last visited Sept. 22, 2021) ("All students older than 2 years and all school staff should wear face masks at school and child care settings (unless medical or developmental conditions prohibit use)."); *AMA statement on CDC's updated mask guidance to combat COVID-19 spread*, Amer. Med. Ass'n. (July 27, 2021), https://www.ama-assn.org/press-center/ama-statements/ama-statement-cdc-s-updated-mask-guidance-combat-covid-19-spread ("We strongly support the updated [CDC] recommendations, which call for universal masking in areas of high or substantial COVID-19 transmission and in K-12 schools, to help reduce transmission of the virus.").

[4] Hannah Natanson, *Northam mandates masks inside all K-12 schools in Virginia this fall, even for vaccinated*, Wash. Post (Aug. 12, 2021), https://www.washingtonpost.com/local/education/virginia-schools-mask-mandate-covid/2021/08/12/b4135ddc-fb7e-11eb-9c0e-97e29906a970_story.html (accessed Sept. 23, 2021); Jordan Monaghan, *Governor Cooper Pushes Vaccination Requirements and Urges Schools Districts to Keep Mask Mandates*, Office of Gov. Cooper (Sept. 9, 2021), https://governor.nc.gov/news/press-releases/2021/09/09/governor-cooper-pushes-vaccination-requirements-and-urges-schools-districts-keep-mask-mandates (accessed Sept. 22, 2021) ("Currently, 109 school districts covering more than 95% of children have mandatory masks."); Savannah Tryens-Fernandes, *Almost all Alabama schools require masks as COVID cases increase,* AL.com (Sept. 3, 2021), https://www.al.com/news/2021/09/almost-all-alabama-schools-require-masks-as-covid-cases-increase.html (accessed Sept. 22, 2021) (finding that approximately 90% of Alabama schools have mask mandates).

[5] Letter from U.S. Dep't of Edu., Office of C.R. to Molly M. Spearman, State Superintendent of Edu. 3 (Aug. 30, 2021), https://www2.ed.gov/about/offices/list/ocr/correspondence/other/20210830-south-carolina-doe.pdf ("OCR is concerned that South Carolina's restriction on schools and school districts from putting masking requirements in place may be preventing schools in South Carolina from meeting their legal obligations not to discriminate based on disability and from providing an

Both the Governor and the Attorney General seek to evade responsibility for these actions, requesting the Court to summarily dismiss them from this action, and to dismiss the action itself. ECF 59 & 71. Because the legal arguments advanced in these briefs are entirely without merit, Defendants' motions should be denied.

**LEGAL STANDARD**

A Rule 12(b)(6) motion "tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or applicability of defenses." *Republican Party of N. Carolina v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In ruling on a motion to dismiss, the Court must accept all factual allegations in the complaint as true and dismiss the case only where "it appears beyond doubt that the plaintiff can prove no set of facts to support [its] allegations." *Richmond, Fredericksburg & Potomac RR Co. v. Forst*, 4 F.3d 244, 247 (4th Cir. 1993) (citation omitted). This is particularly true where the complaint involves allegations of civil rights violations as the Court must be "'especially solicitous' of the wrongs alleged." *Harrison v. U.S. Postal Serv.*, 840 F.2d 1149, 1152 (4th Cir. 1988) (citation omitted). In such cases, the Court "must not dismiss the complaint 'unless it appears to a certainty that the plaintiff would not be entitled to relief under any legal theory which might plausibly be suggested by the facts alleged.'" *Id.*

To the extent Defendants' Motion arises under Rule 12(b)(1), Fed. R. Civ. P., the standard is even higher: a trial court should only dismiss under Rule 12(b)(1) if the jurisdictional allegations are "clearly ... immaterial, made solely for the purpose of obtaining jurisdiction or where such a claim is wholly unsubstantial and frivolous." *Bell v. Hood*, 327 U.S. 678, 682-83

---

equal educational opportunity to students with disabilities who are at heightened risk of severe illness from COVID-19.").

3

(1946); *see also Kerns v. United States*, 585 F.3d 187, 193 (4th Cir. 2009) ("[W]hen the jurisdictional facts and the facts central to a tort claim are inextricably intertwined, the trial court should ordinarily assume jurisdiction and proceed to the intertwined merits issues.").

## ARGUMENT

I. **Plaintiffs Have Standing to Sue the Attorney General to Enjoin Enforcement of Proviso 1.108**

The Attorney General's standing argument is self-defeating. Defendant Wilson agrees that "[h]e possesses broad discretion as to whether or not to bring an action if he chooses to do so," and makes no assurances that he will not sue the next school district to adopt a mask mandate. ECF 71-1, pp 5-6. These dispositive confessions notwithstanding, Plaintiffs will briefly address the Attorney General's arguments.

A. **Plaintiffs' injuries are "fairly traceable" to the Attorney General's enforcement of Proviso 1.108.**

Traceability is shown where a plaintiff alleges that a defendant's conduct "has affected or has the potential to affect his interests." *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 161 (4th Cir. 2000) (en banc). When a claimant seeks prospective relief from a state law, the alleged injury is "fairly traceable" to the state actor(s) capable of enforcing that law. *See Indep. Party of Florida v. Sec'y, State of Florida*, 967 F.3d 1277, 1281 (11th Cir. 2020).

Here, Plaintiffs have alleged: (1) while COVID-19 rates remain high, Defendant Districts must impose masking requirements to make schools accessible to children with disabilities under the ADA and Rehabilitation Act; and (2) that the State's enforcement of Proviso 1.108—including through actions of the Attorney General—impedes the Defendant Districts' ability to do so. ECF 1, ¶¶ 67, 85, 94 & 95. The Attorney General readily concedes that he is authorized to enforce Proviso 1.108. ECF 71-1, pp 5-6. In fact, the record shows that Defendant Wilson is

more than willing to exercise that authority.[6] For example, when the City of Columbia passed an ordinance that Defendant Wilson felt violated Proviso 1.108, he immediately sued the City to enjoin its conduct. *Wilson, ex rel. v. City of Columbia*, No. 2021-000889 (S.C. filed Aug. 19, 2021). ECF 1, ¶ 55. Whether he did so reflexively or at the request of Speaker Lucas is immaterial; in either instance, the harm—enforcement of Proviso 1.108—is traceable to the Attorney General. Furthermore, the holding from *Wilson* has already been weaponized to challenge Defendant Charleston School District's latest attempt to enforce masking requirements at school.[7]

In short, the fact that the Attorney General shares authority to enforce Proviso 1.108 with the Governor does not immunize him from suit. Plaintiffs' injuries are fairly traceable to Defendant Wilson's proven and threatened conduct, and no more is required to demonstrate this element of standing.

**B. Plaintiffs' injuries are redressable by enjoining the Attorney General's enforcement of Proviso 1.108.**

A party "satisfies the redressability requirement when he shows that a favorable decision will relieve a discrete injury to himself. He need not show that a favorable decision will relieve his every injury." *Larson v. Valente*, 456 U.S. 228, 243 n.15 (1982). Moreover, a plaintiff need

---

[6] This case and two others involve the proviso challenged here—Proviso 1.108. *See Wilson, ex rel., v. City of Columbia*, Case No. 2021-000889 (S.C. Sept. 2, 2021); *Richland Cty School Dist. 2, et al., v. Lucas, et al.*, Case No. 2021-000892 (argued Aug. 31, 2021). The other involved a similar law, Proviso 117.190, that Defendant Wilson unsuccessfully argued banned mask mandates at "Higher Education Facilities." *Creswick v. Univ. of S. Carolina*, Case No. 2021-000833 (S.C. Aug. 17, 2021).

[7] *See Facemasks Enforcement*, Charleston County School District https://www.ccsdschools.com/facemasks (accessed Sept. 22, 2021) ("Enforcement begin[s] on Monday, September 20") *and* Tim Renaud & Riley Benson, *Lawsuit filed against Charleston County School District over face mask requirement*, News 2 (Sept. 17, 2021), https://www.counton2.com/news/local-news/charleston-county-news/lawsuit-filed-against-charleston-county-school-district-over-face-mask-requirement/) (accessed Sept. 21, 2021).

not show that requested relief will completely cure their injury; the ability "to effectuate a partial remedy" is sufficient to satisfy Article III's redressability requirement. *Uzuegbunam v. Preczewski*, 141 S.Ct. 792, 801 (2021) (citation omitted) (holding that nominal damages are sufficient to preserve redressability).

Defendants do not appear to dispute that Defendant Districts would enforce mask requirements but for Proviso 1.108. Indeed, many school districts enforced such requirements prior to enactment of Proviso 1.108, including during periods where infection rates were far lower than they are currently. [8] Some districts, like Greenville, have even publicly blamed Proviso 1.108 for their inability to enforce masking for the 2021-22 school year.[9] These facts,

---

[8] *See*, *e.g*., CCSD Safe Restart Plan to safely reopen schools in Fall 2020: Implementation Plan 2, Charleston County School District (Aug. 26, 2020), https://www.ccsdschools.com/cms/lib/SC50000504/Centricity/Domain/3093/Safe%20Restart%20Implementation%20Guide.pdf (accessed Sept. 22, 2021) ("Students and staff are expected to wear face coverings at all times.") (Exhibit B); *Back-to-School 2020-21 Student Handbook 8*, Richland County School District 2 (Mar. 26, 2021), https://www.richland2.org/RichlandDistrict/media/Richland-District/Documents/2020-2021-Back-2-School-Handbook_Part-3-3-26.pdf (accessed Sept. 22, 2021) (Exhibit C); *SDOC Required COVID-19 Safety Precautions*, School District of Oconee County, https://docs.google.com/document/d/1Mi0rJKWAAFkdUKGapBF4758S7UMuA5dVtpzOxnbzpTU/edit at *1 (accessed Sept. 22, 2021) ("Masks required for all students/staff in common areas and buses") (Exhibit D); *also see Masks and COVID-19: Return to School 2020-21*, SDOC, https://drive.google.com/file/d/1KniRBtRXTQYycGnaAehlVHIJmi-45bn3/view (accessed Sept. 22, 2021) (extolling the effectiveness of masking) (Exhibit E).

[9] *See Safe Return to In-Person Instruction & Continuity of Services Plan*, Greenville County School District (Sept. 13, 2021), https://drive.google.com/file/d/17i50b5aOzljL28sWtuQiInv53ghkBovB/view at *1 (accessed Sept. 22, 2021) ("*Per action of the General Assembly*, masks will not be required for students or staff in school buildings") (emphasis added) (citing 2021-22 State Budget Proviso 1.108); *also see id.* ("*Since masks cannot be required under a State Budget Proviso*, schools would have no recourse for a student who removes his or her mask while sitting with masked students. Additionally, depending on classroom populations and seating, it may be physically impossible to provide a boundary area between masked and unmasked students in some classrooms.") (emphasis added) (Exhibit F).

coupled with the Attorney General's enforcement authority, show that injunctive relief against Defendant Wilson is a necessary component of redressing Plaintiffs' present and future injuries.

## II. Defendants' Legal Arguments for Dismissal are Without Merit.

In their motions to dismiss, the Governor and Attorney General largely recycle the arguments they advanced against the motion for preliminary injunction. These arguments have no more merit now than they did when Defendants first raised them twelve days ago.[10] In addition to the arguments below, Plaintiffs respectfully incorporate by reference the rebuttal of these arguments advanced in their reply brief in support of the preliminary injunction.[11] *See* ECF 70.

### A. Universal masking is a *per se* reasonable modification that has been successfully implemented throughout the country, including in Defendant Districts.

#### 1. Universal Mask Wearing Easily Satisfies the Legal Test for a Reasonable Modification Under the ADA

Plaintiffs and Defendants agree: *National Federation of the Blind v. Lamone* controls whether universal masking is a reasonable modification under the ADA. ECF 71-1 at 7-8. The

---

[10] Despite its recency, the Attorney General's Motion wisely chooses not to rely on *Hayes v. DeSantis*, No. 1:21-cv-22863-KMM (S.D. Fl. Sept 15, 2021). There, the court denied relief from Governor DeSantis's executive order banning mask mandates because the plaintiffs' complaint, while invoking the ADA, was essentially a claim for FAPE under the IDEA. *Id.* at *15-16 ("The Complaint is replete with explicit references to alleged denials of FAPE."). By contrast, each of Plaintiffs' claims here unquestionably arise under the ADA and Section 504, as determined by the Supreme Court's test in *Frye v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 756 (2017) (gravamen of complaint resolved by asking: (1) "could the plaintiff have brought essentially the same claim … [against] a public facility that was *not* a school?" and (2) could an *adult* at the school … have pressed essentially the same grievance?"). *See* ECF 16-1, pp 14-16; ECF 70, p 10.
[11] To avoid needless repetition, Plaintiffs rely heavily on their Reply in Support of Preliminary Injunction, ECF 70, pp 10-15, to rebut Defendant Wilson and McMaster's radical legal arguments regarding intentional discrimination and the existence of a private cause of action under Title II of the ADA, and rely exclusively on that filing to rebut Defendants' preemption arguments, *id.* at 18-20.

*Lamone* court held that "[a] modification is reasonable if it is 'reasonable on its face' or used 'ordinarily or in the run of cases' and will not cause 'undue hardship.'" 813 F.3d 494, 507 (4th Cir. 2016) (quoting *Halpern v. Wake Forest Univ. Health Scis.*, 669 F.3d 454, 464 (4th Cir. 2012). "[T]he burden of establishing the reasonableness of an accommodation is 'not a heavy one' and that it 'is enough for the plaintiff to suggest the existence of a plausible accommodation, the costs of which, facially, do not clearly exceed its benefits.'" *Lamone*, 813 F.3d at 507-08 (quoting *Borkowski v. Valley Cent. Sch. Dist.*, 331 F.3d 261, 280 (2d Cir. 2003)).

Plaintiffs have easily met this light burden. Adhering to CDC and DHEC guidance during the worst pandemic in a century—a pandemic that continues to infect thousands of South Carolina kids[12]—is reasonable on its face. School districts across the country have adopted universal masking requirements, including schools in Alabama, North Carolina, and Virginia.[13] Defendants Spearman[14] and McMaster[15] have both officially endorsed masking as a reasonable

---

[12] South Carolina Children's Hospital Collaborative, *September 21, 2021 Covid Report,* Facebook (Sept. 21, 2021), https://www.facebook.com/scchcollaborative/photos/a.274215739275600/4612600175437113/ (accessed Sept. 22, 2021) (noting that, as of September 21, 2021, 30 children are hospitalized, nine children are in critical care, and five children are on ventilators) (Exhibit G).

[13] *See supra* note 4.

[14] *Synopsis Agenda/Executive Summary: August 11, 2020*, State Board of Education, Health & Safety of Students Policy (Aug. 11, 2020), https://ed.sc.gov/state-board/state-board-of-education/additional-resources/sbe-health-and-safety-of-students-policy/ (accessed Sept. 21, 2021) ("With the start of the 2020-21 school year approaching, and to best protect the health, safety, and welfare of South Carolina public school students and staff, the SCDE supports the national and state efforts to slow the spread of COVID-19 by requiring face coverings to be worn on school buses and within public school facilities.") (Exhibit H).

[15] Executive Order 2020-50 (Aug. 6, 2020), https://governor.sc.gov/sites/default/files/Documents/Executive-Orders/2020-08-02%20FILED%20Executive%20Order%20No.%202020-50%20-%20Initiating%20Additional%20Emergency%20Measures%20%26%20Consolidating%20Previous%20Orders.pdf at *6 (accessed Sept. 22, 2021) ("I hereby order and direct that effective Monday, August 3, 2020, at 5:00 p.m., individuals shall wear a Face Covering in state government offices, buildings, and facilities in accordance with … DHEC.") (Exhibit I).

and necessary precaution. And the fact that several Defendant Districts enforced masking mandates in the 2020-21 school year[16] further underscores the reasonableness of the measure. *Lamone*, 813 F.3d at 508 ("[A]lthough not determinative by itself, the fact that a version of the [proposed modification tool] was voluntarily implemented by defendants . . . 'without any apparent incident,'—speaks to the reasonableness of using the tool.").

Given the widespread familiarity and minimal burdens associated with mask wearing, universal masking does not create an undue hardship for school districts and students. In fact, this modest modification generates substantial benefits for their classmates and the general community, given the critical role K-12 mask wearing can play in slowing community transmission of COVID.[17]

Universal masking is objectively reasonable under the current (and dire) circumstances. In finding masks to be a reasonable modification under Title II of the ADA in a nearly identical case, the Western District of Tennessee observed that "the use of masks is overwhelmingly supported as a means of preventing COVID-19 transmission." *G.S. by and through Schwaigert v. Lee*, No. 21-cv-02552-SHL, at 13 (W.D. Tenn. Sept. 17, 2021). Experts in this case reached the

---

[16] *See supra*, note 8.
[17] Jessica Mele et al., *Mask Interventions in K12 Schools Can Also Reduce Community Transmission in Fall 2021*, medRxiv (Sept. 15, 2021), https://www.medrxiv.org/content/10.1101/2021.09.11.21263433v1.article-info.

same conclusion. *See* ECF 16-2 (Saul Decl.). Governor McMaster has repeatedly urged South Carolinians to wear masks,[18] and has even suggested they have benefits when worn in schools.[19]

Finally, the Individual Plaintiffs are hardly the only children for whom accommodation is necessary. According to the CDC, numerous conditions, including diabetes, sickle cell disease, asthma, and obesity, increase the risk of severe COVID-19 illness.[20] Many South Carolina children have these conditions: An estimated 8.4% of South Carolina children have asthma,[21] and 22.1% of South Carolina children aged 10 through 17 are clinically obese.[22] On these facts, allowing school districts to adopt universal masking is an abundantly reasonable measure that can ensure that each public-school facility is open and accessible to all children.

    2.    <u>Defendants Offer No Explanation for *How* Masking Would Fundamentally Alter the Educational Environment</u>

---

[18] NPR, South Carolina Governor Bans Mask Mandates (May 12, 2021), (""Everybody knows what we need to do to stay safe – including wearing a mask if you're at risk of exposing others…."") available at: https://www.npr.org/sections/coronavirus-live-updates/2021/05/12/996078156/south-carolina-governor-bans-mask-mandates#:~:text=THE%20CORONAVIRUS%20CRISIS-,South,-Carolina%20Governor%20Bans; *see also* WIS News, McMaster urges strengthening of local face mask ordinances, allows entertainment venues to open under conditions (July 29, 2020), available at: https://www.wistv.com/2020/07/29/mcmaster-urges-strengthening-local-face-mask-ordinances-allows-entertainment-venues-open-under-conditions/; WYFF News, SC governor urges people to wear masks so 'we can enjoy high school and college football' (July 2, 2020), available at: https://www.wyff4.com/article/sc-governor-urges-people-to-wear-masks-so-we-can-enjoy-high-school-and-college-football/33072588#.

[19] WIS News, Reporters Q&A with Governor McMaster on SC's COVID-19 Response (September 14, 2021), available at: https://www.wistv.com/2021/09/14/read-reporters-qa-with-gov-mcmaster-scs-covid-19-response/ (emphasis added).

[20] Centers for Disease Control, *CDC updates, expands list of people at risk of severe COVID-19 illness* (June 25, 2020), available at https://www.cdc.gov/media/releases/2020/p0625-update-expands-covid-19.html

[21] *Asthma in South Carolina*, SCDHEC, http://scdhec.gov/sites/default/files/Library/CR-011418.pdf (accessed Sept. 22, 2021).

[22] *State of Childhood Obesity*, Robert Wood Johnson Foundation, https://stateofchildhoodobesity.org/states/sc/ (accessed Sept. 21, 2021).

The only defense to reasonable modification under Title II is an affirmative showing that such a modification "would fundamentally alter the nature of the service, program, or activity". *See* ECF 70, pp 16-17 (citing 28 CFR § 35.130(b)(7)). Defendant Wilson misstates this legal standard,[23] and then fails to meet it. There is nothing facially unreasonable about allowing school districts to adopt universal masking during a pandemic.[24] Mask wearing does not require changing the physical infrastructure of a school. It does not require changing a school's schedule or curricula. It costs little and is easy to implement. In fact, in its study of masking in the 2020-21 academic year, the South Carolina DHEC concluded that "the wearing of masks is an effective method to reduce the spread of COVID-19 in schools," "the use of masks in children is safe and … mask wearing does not negatively impact academic development or performance," and mask-wearing "can be expected to help keep children in school, which should lead to increased academic performance and socialization compared to being quarantined."[25]

If the Attorney General believes that masks would "fundamentally alter" schools' ability to provide their core services, programs, or activities, then he shoulders the burden of explaining how that is true. But as it stands, and under well-settled law, such conclusory arguments must be rejected.

    3.    <u>Under Fourth Circuit Law, Modifications Are Reasonable Under the ADA Even When Prohibited by State Law</u>

---

[23] Defendant Wilson's Motion to Dismiss—like his Motion opposing a preliminary injunction—relies primarily on cases interpreting Title I of the ADA, which are inapplicable here. *See* ECF 71-1, p 7 (citing *Perdue v. Sanofi-Aventis U.S., LLC*, 999 F.3d 954, 962 (4th Cir. 2021) for the rule that the ADA "does not require companies to create new positions to accommodate their employees with disabilities").

[24] *Supra* note 14 (Dept. of Education approving of universal masking); *see also supra* note 15 (McMaster Executive Order 2020-50 requiring masking).

[25] *The Science on Mask Use in K-12 Schools*, DHEC (Aug. 20, 2021), https://scdhec.gov/sites/default/files/media/document/Science-on-Mask-Use-in-K-12-Schools_8.20.21_FINAL.pdf at *6 (accessed Sept. 22, 2021).

The Attorney General contends that mask wearing cannot be a reasonable modification because "[t]he ADA certainly does not rewrite state law." ECF 71-1, p 8. This is simply wrong. As the Fourth Circuit explained in *Lamone*, "[i]f all state laws were insulated from Title II's reasonable modification requirement solely because they were state laws, the ADA would be powerless to work any reasonable modification in any requirement imposed by state law, no matter how trivial the requirement and no matter how minimal the costs of doing so." 813 F.3d at 508 (quoting *Mary Jo C. v. New York State and Local Ret. Sys.*, 707 F.3d 144, 163 (2d Cir. 2013)).

It also bears mentioning that the ADA does not bow to parental choice. The Fourth Circuit has approved of mandatory immunization programs for schoolchildren, noting that "the Supreme Court has consistently recognized that a state may constitutionally require school children to be immunized." *Workman v. Mingo Cnty. Bd. of Educ.*, 419 F. App'x 348, 356 (4th Cir. 2011). In so doing, the court resoundingly rejected the idea that personal "liberty" can extend to "expos[ing] the community or the child to communicable disease." *Id*. at 353 (quoting *Prince v. Massachusetts*, 321 U.S. 158, 166-67 (1944)).[26] As the Fourth Circuit explained, "[r]equiring public entities to make changes to rules, policies, practices, or services is exactly what the ADA does." *Lamone*, 813 F.3d at 508 (citation omitted).

### B. Plaintiffs do not need to establish intentional discrimination or bad faith to obtain injunctive relief under the ADA or the Rehabilitation Act.

Both the Governor and the Attorney General incorrectly contend that a plaintiff is required to establish intent, bad faith, or gross misconduct to obtain injunctive or declaratory

---

[26] The Fourth Circuit has also repeatedly upheld school public school dress codes, which it recognizes can decrease disruption and facilitate equal learning opportunities. *See, e.g.*, *Hardwick ex rel. Hardwick v. Heyward*, 711 F.3d 426, 441-43 (4th Cir. 2013).

relief under the Americans with Disabilities Act or the Rehabilitation Act. ECF 59, p 2. ECF 71-1 at 8-9. In addition to lacking any textual support, Defendants McMaster and Wilson's "intentional discrimination" theory is also irreconcilable with well-established law in the Fourth Circuit and Supreme Court. The Fourth Circuit has affirmed injunctions against state officials for violations of the ADA without any showing of intent, bad faith, or gross misconduct, holding:

> [T]he ADA and the Rehabilitation Act do more than simply provide a remedy for intentional discrimination. They reflect broad legislative consensus that making the promises of the Constitution a reality for individuals with disabilities may require even well-intentioned public entities to make certain reasonable accommodations. Our conclusions here are not driven by concern that defendants are manipulating the election apparatus intentionally to discriminate against individuals with disabilities; our conclusions simply flow from the basic promise of equality in public services that animates the ADA.

*Nat'l Federation of the Blind v. Lamone*, 813 F.3d 494, 510 (4th Cir. 2016); *see also id*. at 505 ("Congress explicitly found [in drafting the ADA] that discrimination was not limited to outright intentional exclusion") (cleaned up).

The Supreme Court has similarly noted that the Americans with Disabilities Act extends beyond showing of intentional discrimination. *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 611 (1999) (Kennedy, J., concurring) (discrimination had been found under Title II of the ADA even though there was "no allegation that Georgia officials acted on the basis of animus"); *see also Paulone v. City of Frederick*, 787 F. Supp. 2d 360, 373 (D. Md. 2011) (affirming that a plaintiff need not show discriminatory animus to prevail on a claim for damages under Title II of the ADA); *Jacobson v. Barnhart,* No. 1:05-cv-1381, 2006 WL 8456562, at *5 (D. Md. Dec. 14, 2006) (observing that "[a] discriminatory animus requirement … is inconsistent with the purpose of the Rehabilitation Act"). As recently as 2017 the Supreme Court has identified a public building's lack of wheelchair accessibility as a quintessential violation of Title II of the ADA,

which is almost impossible to construe as the result of discriminatory intent or bad faith. *Fry v. Napoleon Cmty. Sch.*, 137 S.Ct. 744, 755 (2017).

The law plainly shows that Plaintiffs are not required to show discriminatory intent, bad faith, or gross misconduct to obtain prospective relief. The Defendants are simply wrong on this point.

### C. Plaintiffs have the right to bring this action under the ADA and Rehabilitation Act.

The Governor, but not the Attorney General, contends that there is no private right of action to pursue disparate impact or failure-to-accommodate theories under the Americans with Disabilities Act or the Rehabilitation Act. ECF 59 at 2. The Governor cites no law and is wrong. As the Fourth Circuit has repeatedly recognized, "Title II allows plaintiffs to pursue three distinct grounds for relief: (1) intentional discrimination or disparate treatment; (2) disparate impact; and (3) failure to make reasonable accommodations." *Lamone*, 813 F.3d at 503 n. 5. *See also A Helping Hand, LLC, v. Baltimore Cty*, 515 F.3d 356, 362 (4th Cir. 2008) (same); *Democracy N.C. v. N.C. State Bd. of Elections*, 476 F. Supp. 3d 158 (M.D.N.C. 2020) (holding that a disabled plaintiff had established substantial likelihood of success on the merits of his claims alleging disparate impact and failure to provide reasonable accommodations under Title II and section 504). And courts have long recognized the rights of private parties to bring each of these claims. *See*, *e.g.*, *Paulone*, 787 F. Supp. 2d at 371 ("[I]t is well established that private parties may sue to enforce Title II of the ADA and the Rehabilitation Act.") (collecting cases). Indeed, the Supreme Court has continued to approve of private actions under the ADA, even after *Sandoval*. *See*, *e.g.*, *Fry*, 137 S.Ct. at 751-52 (failure to accommodate claim brought by private individual). The Governor offers no explanation for this, pushing instead for this Court to gut this decades-old civil rights statute.

## CONCLUSION

WHEREFORE, on grounds asserted here, in Plaintiffs' Motion for TRO (ECF 16), Supplement (ECF 41), and Reply (ECF 70), Plaintiffs respectfully ask that the Court deny the motions to dismiss (ECF 59 & 71).

Dated: September 23, 2021

Respectfully Submitted,

**AMERICAN CIVIL LIBERTIES UNION OF SOUTH CAROLINA**

*D. Allen Chaney Jr.*
Allen Chaney
Federal Bar No. 13181
P.O. Box 20998
Charleston, SC 29413
T: (843) 282-7953
E: achaney@aclusc.org

**SOUTH CAROLINA APPLESEED LEGAL JUSTICE CENTER**

Adam Protheroe
Federal Bar No. 11033
P.O. Box 7187
Columbia, SC 29202
T: (803) 816-0607 | Fax: (803) 779-5951
adam@scjustice.org

**DISABILITY RIGHTS SOUTH CAROLINA**

B. Randall Dong (Fed. Ct. ID 5989)
Anna Maria Conner (Fed. Ct. ID 5532)

Amanda C. Hess (Fed. Ct. ID 10303)
3710 Landmark Dr., Suite 208
Columbia, SC 29204
T: (803) 782-0639
dong@disabilityrightssc.org
conner@disabilityrightssc.org
hess@disabilityrightssc.org


**WYCHE, P.A.**

Rita Bolt-Barker
Federal Bar No. 10566
200 East Camperdown Way
Greenville, SC 29601
T: (864) 242-8235 | Fax: (864) 235-8900
E: rbarker@wyche.com


**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**

Louise Melling*
125 Broad St.
New York, NY 10004
T: (212) 549-2637
E: lmelling@aclu.org

Susan Mizner*
39 Drumm Street
San Francisco, CA 94111
T: (415) 343-0781
E: smizner@aclu.org


**ARNOLD & PORTER KAYE SCHOLER LLP**

John A. Freedman*
Tara Williamson
601 Massachusetts Ave, NW
Washington, DC 20001
T: 202.942.5316
E: john.freedman@arnoldporter.com
E: tara.williamson@arnoldporter.com

*Motion to proceed *pro hac vice* forthcoming

*Attorneys for the Plaintiffs*