IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| DISABILITY RIGHTS SOUTH CAROLINA, et al. | Civil Action No. 3:21-CV-02728-MGL |
| Plaintiffs, | **REPLY TO PLAINTIFFS' RETURN TO MOTION OF ATTORNEY GENERAL TO DISMISS** |
| v. | |
| HENRY MCMASTER, etc. et al, | |
| Defendants. | |

The Defendant Alan Wilson, Attorney General, submits this Reply to Plaintiffs' Opposition (ECF No. 76). to his Motion to Dismiss (ECF No.'s 71 & 71-1):

Plaintiffs contend that they have standing as to the Attorney General because he has enforcement authority as to the Proviso at issue, 1.108. He does have general enforcement authority as Attorney General, but he is given no specific authority to enforce the Proviso under its terms. In fact, any citizen with standing, such as a parent, a student or a school staff member could sue a school district or municipality for imposing a mask ordinance contrary to the Proviso. The Attorney General sued the City of Columbia because the City was forcing the school district to spend state money to enforce the City's mask ordinance contrary to the restrictions on the use of State appropriations in the Proviso. As the State Supreme Court underscored in *State ex rel. McLeod v. McInnis*, 278 S.C. 307, 313-14, 295 S.E.2d 633, 637 (1982), "[t]he General Assembly has, beyond question, the duty and authority to appropriate money as necessary for the operation of the agencies of government <u>and has the right to specify the conditions under which the appropriated monies shall be spent.</u>" (emphasis added). Proviso

1.108 contains specific limits on the use of State monies which the City, in effect, directed school districts to ignore.

Because the Attorney General only has general authority as to this law and other state laws without specific enforcement authority and because any other citizen with standing could sue to challenge a mask ordinance or policy under the Proviso, no injury or threat of injury is "fairly traceable to the challenged action of the defendant"; and a favorable judicial decision would not "prevent or redress the injury." *Summers v. Earth Island Institute, et al.*, 555 U.S. 488, 493 (2009). *See also Clapper,* 133 S.Ct. at 1147; *Friends for Ferrell Parkway, LLC v. Stasko*, 282 F.3d 315, 320 (4th Cir. 2002). An injunction against the Attorney General would not bar other citizens from suing and therefore would not "redress the [alleged] injury." *Summers*.

Moreover, Plaintiffs fail to address or discuss *Bacon v. City of Richmond*, 475 F.3d 633 (4th Cir. 2007), a case which should be dispositive here. In *Bacon*, the Fourth Circuit rejected the contention that the City of Richmond, the school district and the state were required to fund a federal court order requiring "a city-wide retrofitting of city schools under Tile II of the Americans with Disabilities Act . . . without any determination that the City discriminated against or otherwise excluded plaintiffs from its services and activities." 475 F.3d at 636.

Judge Wilkinson, writing for the Fourth Circuit, noted that

> [o]ur legal system is built on the fundamental principle that remedies are a means of redressing wrong. . . . Remedies, in other words, do not exist in the abstract; rather, they flow from the consequences of some wrong. . . .

*Id.* at 638. Referencing *Milliken v. Bradley*, 418 U.S. 717, 744-45 (1974), the Court turned to the requirements of Title II of the ADA. The Court explained:

> [f]or plaintiffs to prevail on their Title II claim, they must prove that some action attributable to the City caused them to "be excluded from participation in or be denied the benefits of the services, programs or activities of a public

entity, or be subjected to discrimination by any such entity," here the Richmond Public Schools. See 42 U.S.C. § 12132.

The Court concluded that rather than finding that the City "excluded plaintiffs from receiving the benefits of the services or programs or that the City had in any way discriminated against plaintiffs," the District Court noted it had "'no intention of conducting a fault-finding inquiry.'" *Id.* at 639. Thus, the District Court ordered the City to fund making the schools ADA compliant within five years. According to the Fourth Circuit, however,

> We disagree. The district court's remedial order undermines the basic precept of law discussed above: that remedies may be imposed only on responsible parties. Injunctive relief may not issue where, as here, the City played no part in depriving any plaintiff of the rights guaranteed by the ADA. See *Rizzo v. Goode*, 423 U.S. 362, 377, 96 S.Ct. 598, 46 L. Ed.2d 561 (1976). To impose responsibility in the absence of fault and causation would stretch the law of remedies beyond limit. <u>As for Title II, it cannot be read to impose strict liability on public entities that neither caused plaintiffs to be excluded nor discriminated against them. A remedy unmoored to any finding of fault is not a remedy at all and we must therefore reverse the judgment.</u>

*Id.* at 639-640 (emphasis added). That is precisely what Plaintiffs seek here. They attempt to use Proviso 1.108 to find a violation of the ADA by virtue of strict liability. There is no evidence whatsoever that Proviso 1.108 discriminates against or was intended to discriminate against the disabled. Indeed, the South Carolina Supreme Court in *Wilson v. City of Columbia*, ___ S.E.2d ___, 2021 WL 3928992 (S.C. 2021), held that the purpose of the Proviso is to leave to parents the choice as to whether their child will or will not wear a mask. This is consistent with the fundamental "liberty" interests of parents. See *Pierce v. Society of Sisters*, 268 U.S. 510, 535 (1925); *Meyer v. Nebraska*, 262 U.S. 390 (1923) [parents and guardians have a liberty interest "to direct the upbringing and education of children]. The General Assembly did not discriminate against the disabled in doing so. It treated all alike. It protected all parents alike.

Indeed, the Legislature possessed a valid, nondiscriminatory basis, requiring no mask mandate for any school child, leaving it up to the parents to decide that issue.

Moreover, the Court in *Bacon* recognized the "profound implications" of the District Court's Order:

> [a\ State has near plenary authority to allocate governmental responsibilities among its political subdivisions. This power to structure its internal government is among those reserved to the Commonwealth by the Tenth Amendment. See, e.g. *Bradley*, 462 F.2d at 1068. Needless to say, the federal court must in turn respect a State's division of responsibilities. Federal courts must read with especial caution where, as here, a State's paramount interest in educating its children is at stake. . . . Before a federal court may recalibrate the State's basic system of educational governance and conflate the functions of two very different entities, it must "take into account the interests of state and local authorities in managing its own affairs." *Milliken II*, 433 U.S. at 281, 97 S.Ct. 2749. . . .
>
> In the case at hand, however, the separate corporate bodies established by Virginia law are no subterfuge; they were not intended to circumvent any federally created right.

Likewise, here, the General Assembly exercised its plenary authority under the Appropriations Act to limit the powers of its political subdivisions, prohibiting mask mandates by school districts. Proviso 1.108 is neutral on its face. Further, the Supreme Court of South Carolina has found that the purpose of the Proviso – to protect the rights of all parents with school children – is a valid one. It is not discriminatory against the disabled. There is no evidence of "bad faith or gross misjudgment" on the part of the General Assembly in enacting the Proviso. *Estate of A.R. v. Muzyka*, 543 Fed. App. 363, 365 (5th Cir. 2013). There is every evidence instead, that the Proviso was enacted in good faith and for a "legitimate, non-discriminatory reason." *Ferguson v. West Carolina Regional Sewer Auth.*, 104 F.3d 358 at * 2 (4th Cir. 1996). See also *Want v. Cerrone*, 2016 WL 4491761 (D. Md. 2016) at * 4 (quoting *Bacon v. City of Richmond*, 475 F.3d 633, 639-40 (4th Cir. 2007)) [and stating, "While a case

might be stated under either the Rehabilitation Act or Title II of the ADA where inefficiencies of the public service are so egregious that its amounts to a failure to accommodate the disabled persons for whom it was established, that scenario is not portrayed by the allegations asserted by *Want*. . . . The delays and inability to communicate with staff described by plaintiffs are familiar complaints voiced by non-disabled riders of public transportation and do not state a colorable claim of discrimination."].

Finally, the Eleventh Amendment may also be raised here. In *Pendergrass v. Brunson*, 2012 WL 4479265 (D. S.C. 2012), Judge Cain wrote:

> . . . Title II [of the ADA] validly abrogates state sovereign immunity only "insofar as [it] creates a private cause of action for damages against the states for conduct that <u>actually</u> violate the Fourteenth Amendment. *U.S. v. Georgia*, 546 U.S. 151, 159, 126 S.Ct. 877, 163 L. Ed.2d 650 (2006). (emphasis in original).

*Id.* at * 3. In *Pendergrass*, Captain Brunson was sued in his official capacity for violation of Title II of the ADA for actions taken while Plaintiff was in protective custody "when presented with the alternative option of the use of the wheelchair."

The District Court concluded that "Brunson's conduct did not violate the Fourteenth Amendment. Therefore she remains entitled to Eleventh Amendment immunity." According to Judge Cain, "Brunson's decisions were well within her discretion as an employee of the Sheriff of Florence County." *Id.*

Here, Attorney General Wilson is entitled to Eleventh Amendment immunity. While the ADA waives Eleventh Amendment immunity to a limited extent, it does not do so here.

## **CONCLUSION**

For all of the forgoing reasons and for reasons stated in earlier filings, this action should be dismissed.

Respectfully submitted,

ALAN WILSON
Attorney General
Federal ID No.10457

ROBERT D. COOK
Solicitor General
Federal ID No. 285
Email: RCook@scag.gov

/s/ J. Emory Smith, Jr.
J. EMORY SMITH, JR.
Deputy Solicitor General
Federal ID No. 3908
Email: ESmith@scag.gov

September 24, 2021                                          Counsel for Defendant Wilson