# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# COLUMBIA DIVISION

| | |
|---|---|
| DISABILITY RIGHTS SOUTH CAROLINA; ABLE SOUTH CAROLINA; AMANDA McDOUGALD SCOTT, *individually and on behalf of P.S., a minor*; MICHELLE FINNEY, *individually and on behalf of M.F., a minor*; LYUDMYLA TSKALOVA, *individually and on behalf of M.A., a minor*; EMILY POETZ, *individually and on behalf of L.P., a minor*; SAMANTHA BOEVERS, *individually and on behalf of P.B., a minor*; TIMICIA GRANT, *individually and on behalf of E.G., a minor*; CHRISTINE COPELAND, *individually and on behalf of L.C., a minor*; HEATHER PRICE, *individually and on behalf of H.P., a minor*; and CATHY LITTLETON, *individually and on behalf of Q.L., a minor*, Plaintiffs, | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |
| vs. | Civil Action No.: 3:21-02728-MGL |
| HENRY McMASTER, *in his official capacity as Governor of the State of South Carolina*; ALAN WILSON, *in his official capacity as Attorney General of South Carolina*; MOLLY SPEARMAN, *in her official capacity as State Superintendent of Education*; GREENVILLE COUNTY SCHOOL BOARD; HORRY COUNTY SCHOOL BOARD ONE; LEXINGTON COUNTY SCHOOL BOARD ONE; OCONEE COUNTY SCHOOL BOARD; DORCHESTER COUNTY SCHOOL BOARD TWO; CHARLESTON COUNTY SCHOOL BOARD; and PICKENS COUNTY SCHOOL BOARD; Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

## MEMORANDUM OPINION AND ORDER GRANTING
## PLAINTIFFS' MOTIONS FOR A TEMPORARY RESTRAINING ORDER
## AND A PRELIMINARY INJUNCTION

## I.    INTRODUCTION

Disability Rights South Carolina; Able South Carolina; Amanda McDougald Scott, individually and on behalf of P.S., a minor; Michelle Finney, individually and on behalf of M.F., a minor; Lyudmyla Tsykalova, individually and on behalf of M.A., a minor; Emily Poetz, individually and on behalf of L.P., a minor; Samantha Boevers, individually and on behalf of P.B., a minor; Timicia Grant, individually and on behalf of E.G., a minor; Christine Copeland, individually and on behalf of L.C., a minor; Heather Price, individually and on behalf of H.P., a minor; and Cathy Littlejohn, individually and on behalf of Q.L., a minor (collectively, Plaintiffs) filed a complaint for declaratory and injunctive relief.

They filed their lawsuit against Henry McMaster, in his official capacity as Governor of the State of South Carolina (Governor McMaster); Alan Wilson, in his official capacity as Attorney General of South Carolina (AG Wilson); Molly Spearman, in her official capacity as State Superintendent of Education (Superintendent Spearman); Greenville County School Board; Horry County School Board One; Oconee County School Board; Dorchester County School Board Two; Charleston County School Board; Pickens County School Board (the School Boards); and Lexington County School Board One (Lexington) (collectively, Defendants).

In Plaintiffs' complaint, they seek declaratory and injunctive relief to stop enforcement of Proviso 1.108, inasmuch as it bars schools and localities from requiring masking in schools. Plaintiffs assert three claims for relief for violations of: (1) Title II of the Americans with Disabilities Act (Title II), (2) § 504 of the Rehabilitation Act of 1973 (Section 504), and the American Rescue Plan Act of 2021 (ARPA).  The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

Pending before the Court are Plaintiffs' motions for a temporary restraining order and a preliminary injunction, both asking the Court to enjoin enforcement of Proviso 1.108.

Having carefully considered the motions, the responses, the replies, the supplements, the record, and the relevant law, the Court is of the opinion the motions should be granted.

## II.    FACTUAL AND PROCEDURAL HISTORY

The minor plaintiffs "are students with disabilities, including certain underlying medical conditions, which increase their risk of contracting COVID-19 and/or increase their risk of serious complications or death from a COVID-19 infection." Compl. ¶ 5. "These conditions include asthma, congenital myopathy, Renpenning Syndrome, Autism, and weakened immune systems— many of which have been identified by the [Centers for Disease Control & Prevention] as risk factors for severe COVID-19 infections." *Id.*

According to Plaintiffs, "[s]chool districts with students who have disabilities . . . that make them more likely to contract and/or become severely ill from a COVID-19 infection have a legal obligation to ensure that those children can attend school with the knowledge that the school district has followed the recommended protocols to ensure their safety." *Id.* ¶ 7.

In the 2021–22 Appropriations Act, the South Carolina General Assembly prohibited school districts in South Carolina from using appropriated or authorized funds to announce or enforce a mask mandate:

> No school district, or any of its schools, may use any funds appropriated or authorized pursuant to this act to require that its students and/or employees wear a facemask at any of its education facilities. This prohibition extends to the announcement or enforcement of any such policy.

Proviso 1.108.

Plaintiffs contend "[b]y prohibiting any school from imposing a mask mandate, Proviso 1.108 interferes with [a] school's ability to comply with its obligations under federal disability rights laws and illegally forces parents of children with underlying [health] conditions to choose between their child's education and their child's health and safety, in violation of [Title II] and Section 504." Compl. ¶ 7.

As is relevant here, Plaintiffs filed their lawsuit for declaratory and injunctive relief, and two days later, filed motions for a temporary restraining order and preliminary injunction. Defendants responded, and Plaintiffs replied, as well as filed two supplements.

The Court, having been fully briefed on the relevant issues, is prepared to adjudicate the two motions.

## III.    STANDARD OF REVIEW

### A.    *Factors to consider in the granting of motions for a temporary restraining order and a preliminary injunction*

The substantive standards for granting a request for a temporary restraining order and entering a preliminary injunction are the same. *See Virginia v. Kelly*, 29 F.3d 145, 147 (4th Cir. 1994) (applying the preliminary injunction standard to a request for a temporary restraining order).

Both "are intended to meet exigent circumstances[.]" *Ideal Toy Corp. v. Plawner Toy Mfg. Corp.*, 685 F.2d 78, 84 (3d Cir. 1982). They are "an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). "[T]he party seeking [either of these types of relief] must prove [its] own case and adduce the requisite proof, by a preponderance of the evidence, of the conditions and circumstances upon which [it] bases the right to and necessity for injunctive relief." *Citizens Concerned for Separation of Church & State v. City of Denver*, 628 F.2d 1289, 1299 (10th Cir. 1980).

A temporary restraining order and a preliminary injunction should issue only when plaintiffs can "[1] establish that [they are] likely to succeed on the merits, [2] that [they are] likely to suffer irreparable harm in the absence of [temporary or] preliminary relief, [3] that the balance of equities tips in [their] favor, and [4] that [injunctive relief] is in the public interest." *Winter*, 555 U.S. at 20. The burden is on the party seeking injunctive relief to show they are entitled to the relief, not the burden of the other party to show the movant is unentitled. *Granny Goose Foods, Inc. v. Bhd. of Teamsters*, 415 U.S. 423, 443 (1974).

"[A]ll four requirements must be satisfied." *Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 346 (4th Cir. 2009). Thus, even a strong showing of likely success on the merits cannot compensate for failure to show likely injury. *Winter*, 555 U.S. at 21–22. And, irreparable injury alone is insufficient to support equitable relief. *See id.* at 23 (holding irreparable injury was likely to occur, but holding injunctive relief was improper because of the burden on the government and the impact on public interest). In other words, "[a temporary restraining order or a] preliminary injunction shall be granted only if the moving party clearly establishes entitlement." *Di Biase v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017).

"Given [the] limited purpose [of a temporary restraining order and a preliminary injunction], and given the haste that is often necessary . . . , [they are] customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). "Because [the] proceedings are informal ones designed to prevent irreparable harm before a later trial governed by the full rigor of usual evidentiary standards, district courts may look to, and indeed in appropriate circumstances rely on, hearsay or other inadmissible evidence when deciding whether a [temporary restraining order or] preliminary injunction is warranted." *G.G. ex rel. Grimm v. Gloucester Cty. Sch. Bd.*,

822 F.3d 709, 725–26 (4th Cir. 2016), *vacated and remanded on other grounds*, 137 S. Ct. 1239 (2017).

### B.     Prohibitory or mandatory injunctive relief

Injunctive relief "may be characterized as being either prohibitory or mandatory." *League of Women Voters of N. C. v. North Carolina*, 769 F.3d 224, 235 (4th Cir. 2014). "Whereas mandatory [temporary restraining orders and preliminary] injunctions alter the status quo [generally by requiring the non-movant to do something], prohibitory [ones] aim to maintain the status quo and prevent irreparable harm while a lawsuit remains pending." *Id.* at 236 (citation omitted) (internal quotation marks omitted). The Fourth Circuit has "defined the status quo for this purpose to be the last uncontested status between the parties which preceded the controversy." *Id.* (citation omitted) (internal quotation marks omitted).

"Mandatory . . . injunctive relief in any circumstance is disfavored, and warranted only in the most extraordinary circumstances." *Taylor v. Freeman*, 34 F.3d 266, 270 n.2 (4th Cir. 1994) (citation omitted). Or, put differently, "It is fundamental that mandatory injunctive relief should be granted only under compelling circumstances inasmuch as it is a harsh remedial process not favored by the courts." *Citizens Concerned for Separation of Church & State*, 628 F.2d at 1299.

The Fourth Circuit has stated, "Because [temporary restraining orders and] preliminary injunctions are extraordinary remedies involving the exercise of very far-reaching power, [it] should be particularly exacting in its use of the abuse of discretion standard when it reviews an order granting [injunctive relief]." *Pashby v. Delia*, 709 F.3d 307, 319 (4th Cir. 2013) (citations omitted) (internal quotation marks omitted) (alteration marks omitted). "Furthermore, when the [injunctive relief] is mandatory rather than prohibitory in nature, [the Fourth Circuit's] application

of this exacting standard of review is even more searching." *Id.* (citation omitted) (internal quotation marks omitted).

## IV.    DISCUSSION AND ANALYSIS

As a preliminary matter, "Rule 65 does not require an evidentiary hearing[,]" so long as "the party opposing [the injunctive relief has] a fair opportunity to oppose the application and to prepare for such opposition." *Granny Goose Foods, Inc.*, 415 U.S. at 433 n.7. The Court must ensure, however, "relief follows only after consideration of all facts and arguments deemed important by the parties." *Drywall Tapers & Pointers of Greater NYC, Local 1974 v. Operative Plasterers' & Cement Masons' Int'l Ass'n of U.S. & Can.*, 537 F.2d 669, 674 (2d Cir. 1976).

In *Drywall Tapers*, the Second Circuit held "the documentary evidence presented to [the district court] by both sides was sufficient to . . . enable the court to decide whether [injunctive relief] should issue." *Id.* And, as that court noted, plaintiffs "were obviously content to rest on that evidence, as they never requested a . . . hearing." *Id.*

Here, Defendants have had "a fair opportunity to oppose the application and to prepare for such opposition." *Granny Goose Foods, Inc.*, 415 U.S. at 433 n.7. And, neither party requested a hearing. Accordingly, the Court will decide Plaintiffs' motions without a hearing. *See* Local Civil Rule 7.08 ("Unless so ordered, motions may be determined without a hearing.").

### A.    *Whether Plaintiffs seek prohibitory or mandatory injunctive relief*

Only the School Boards address whether the relief Plaintiffs seek is prohibitory or mandatory. The School Boards posit the relief sought is mandatory, as it attempts to alter the status quo of Proviso 1.108. Thus, according to the School Boards, a temporary restraining order

and a preliminary injunction would alter the status quo by placing the parties in their positions pre-enactment of Proviso 1.108.

But, as noted above, the Fourth Circuit has "defined the status quo for this purpose to be the last uncontested status between the parties which preceded the controversy." *League of Women Voters of N. C.*, 769 F.3d at 236 (citation omitted) (internal quotation marks omitted). In that case, the Fourth Circuit concluded the last uncontested status between plaintiffs challenging duly enacted legislation was the period of time prior to its enactment, and under such a scenario, the relief sought was prohibitory, not mandatory. *Id.*

Consequently, the status quo in this case is the position of the parties prior to the enactment of Proviso 1.108 when school districts had the discretionary authority to mandate masks. As such, the relief Plaintiffs seek is prohibitory, not mandatory. But, even if the Court concluded Plaintiffs seek mandatory relief, it would still afford them the relief they seek, even under that tougher standard, for the reasons included herein.

**B.    *Title II and Section 504***

Prior to addressing the parties' arguments, the Court will provide a brief primer on Title II and Section 504.

Title II provides "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To state a claim under Title II, plaintiffs must prove three elements: "(1) they have a disability; (2) they are otherwise qualified to receive the benefits of a public service, program, or activity; and (3) they were denied the benefits of such service, program, or activity, or otherwise

discriminated against, on the basis of their disability." *Nat'l Fed'n of the Blind v. Lamone*, 813 F.3d 494, 503 (4th Cir. 2016).

Section 504 declares "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance[.]" 29 U.S.C. § 794(a). "To the extent possible, [the Court will] construe [Title II] and [Section 504] to impose similar requirements." *Halpern v. Wake Forest Univ. Health Sciences*, 669 F.3d 454, 461 (4th Cir. 2012).

"Claims under . . . Title II and [Section 504] can be combined for analytical purposes because the analysis is 'substantially the same.'" *Seremeth v. Bd. of Cnty. Comm'rs Frederick Cnty.*, 673 F.3d 333, 336 n.1 (4th Cir. 2012) (quoting *Doe v. Univ. of Md. Med. Sys. Corp.*, 50 F.3d 1261, 1265 n.9 (4th Cir. 1995)).

Together, these laws require public schools to afford students with disabilities an equal opportunity to participate in or benefit from the aids, benefits, or services that are provided to others. 28 C.F.R. § 35.130(b)(1), 34 C.F.R. § 104.4(b)(ii).

## C.    *Plaintiffs vs. Governor McMaster and AG Wilson*

### 1.    *Whether Plaintiffs have established they are likely to succeed on the merits*

Here, Plaintiffs argue, among other things, the "Defendants are failing to make reasonable modifications in violation of 28 C.F.R. § 35.130 . . . because they are prohibiting schools from requiring all students . . . wear masks at school so that students with disabilities can participate in in-person learning with their peers." Pls.' Mot. at 15–16. Plaintiffs note, however, they "have not asked the Court to order universal masking for all students[,]" but rather "have merely insisted that

the Court enjoin Proviso 1.108" so the School Boards and Lexington can satisfy their burden to make reasonable modifications under Title II and Section 504.  Pls.' Reply at 17.

Governor McMaster and AG Wilson contend, among other things, there is no private right of action for failure to accommodate claims under Title II and Section 504, and even if there was, Title II and Section 504 permit only claims for intentional discrimination.

Here, this Court need look no further than the Fourth Circuit's decision in *Lamone*, 813 F.3d 494, to conclude Title II and Section 504 provide for a private right of action under Title II and Section 504, as well as allow Plaintiffs to assert non-intentional discrimination claims.

The Fourth Circuit, in affirming the district court's conclusion Maryland's absentee voting program violated [Title II and Section 504], noted:

> [Title II and Section 504] do more than simply provide [for a private right of action] for intentional discrimination.  They reflect broad legislative consensus that making the promises of the Constitution a reality for individuals with disabilities may require even well-intentioned public entities to make certain reasonable accommodations. Our conclusions here are not driven by concern that defendants are manipulating the election apparatus intentionally to discriminate against individuals with disabilities; our conclusions simply flow from the basic promise of equality in public services that animates [Title II and Section 504].

*Id.* at 510.

Consequently, inasmuch as the Court concludes Plaintiffs may bring a Title II and Section 504 discrimination claim based on a failure to make reasonable accommodations, as did the litigants in *Lamone*, the Court must determine whether Plaintiffs have shown they have been denied meaningful access to in-person education, programs, services, and activities, and whether allowing school districts to require mandatory face coverings is a reasonable modification.

       *a.*      **Whether Plaintiffs have shown they have been denied meaningful access to in-person education, programs, services, and activities**

A review of the declarations provided by Plaintiffs in this case demonstrate, because of Proviso 1.108, Governor McMaster and AG Wilson have denied the minor plaintiffs meaningful access to in-person education, programs, services, and activities because of Proviso 1.108. *See* Price Decl. ¶ 11 ("Unfortunately, due to the concerns I have about the health and safety of my family, I have had to make the difficult decision to move my son back to virtual learning to keep him and my family safe from [COVID-19]."); Boevers Decl. ¶ 8 (noting her child's "pediatrician advises that [her son] return to school only if he would be in a fully masked environment."); Tsykalova Decl. ¶ 13 ("I do not want my daughter to miss out on the entire school year.  After being out of contact with her peers since March 2020, she was so much looking forward to starting her kindergarten in 'the big school with blue roof.'  I worry that another year away from her peers will stunt her development, particularly socially."); Copeland Decl. ¶ 6 (noting virtual school last year for her child was "miserable[,]" and her child's "social and behavioral skills declined in a virtual setting.").  Governor McMaster and AG Wilson fail to address this issue.

       *b.*      **Whether allowing school districts to require mandatory face coverings is a reasonable modification that would enable students with disabilities to have equal access to in-person education, programs, services, and activities**

Concluding Governor McMaster and AG Wilson have denied the minor plaintiffs meaningful access to in-person education, programs, services, and activities does not end our analysis.  "Not all public services, programs, or activities can be made meaningfully accessible to all citizens, or at least they cannot be made so without a prohibitive cost or unreasonable effort on the part of the public entity." *Lamone*, 813 F.3d at 507.  "For this reason, to prevail on [a Title II

and Section 504] claim, plaintiffs must propose a reasonable modification to the challenged public program that will allow them the meaningful access they seek." *Id.*

Department of Justice regulations implementing Title II provide "[a] public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability." 28 C.F.R. § 35.130(b)(7). Section 504's "regulations impose similar requirements." *Lamone*, 813 F.3d at 506 n.8.

"A modification is reasonable if it is 'reasonable on its face' or used 'ordinarily or in the run of cases' and will not cause 'undue hardship.'" *Id.* at 507 (quoting *Halpern*, 669 F.3d at 464). "Determination of the reasonableness of a proposed modification is generally fact-specific." *Id.*

Plaintiffs "argue that mandatory face coverings are a reasonable modification that would enable students with disabilities to have equal access to in-person education, programs, services, and activities." Pls.' Reply at 16.

Governor McMaster and AG Wilson contend requiring all students to wear a face mask is an unreasonable modification for children with disabilities.

As noted by Plaintiffs' expert Robert Saul, President of the South Carolina Chapter of the American Academy of Pediatrics, "[b]ased on data from [forty-nine] states, South Carolina . . . has the third highest proportion of pediatric COVID-19 cases in the United States[,] with children accounting for over [nineteen] percent of all South Carolina COVID-19 cases." Saul Decl. ¶ 13 (footnote omitted). And, "[r]ecent studies have confirmed that wearing masks is one of the most powerful tools to thwart the transmission of COVID-19 in indoor settings, such as schools." *Id.* ¶ 26.

Thus, the Court concludes allowing school districts, at their discretion, to require face coverings is a reasonable modification, as the benefits of masking significantly exceed the costs.

*See generally Henrietta D. v. Bloomberg*, 331 F.3d 261, 280 (2d Cir. 2003) (quoting *Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 138 (2d Cir. 1995)) (stating that the burden of establishing the reasonableness of an accommodation is "'not a heavy one'" and that it "is enough for the plaintiff to suggest the existence of a plausible accommodation, the costs of which, facially, do not clearly exceed its benefits[.]'").

> ### c.    Whether Plaintiffs' argument is undercut by unrelated lawsuits filed by plaintiffs with disabilities in other courts asserting their disability precludes them from wearing a mask in a store setting

Nevertheless, Governor McMaster contends Plaintiffs' argument is "irreconcilable with the frequent statements that disability-rights advocates have made since early in this pandemic that many people with disabilities cannot wear masks and should be excluded from mask mandates." Governor McMaster Resp. in Opp'n at 25.  And, he avers "[m]ultiple disabled plaintiffs have challenged mask mandates, demanding that they not be subject to those mandates under the ADA." *Id.* (citing cases).  Plaintiffs' fail to directly address this contention.

Here, Governor McMaster's contention is without merit.  As an initial matter, the cases cited by Governor McMaster supporting his argument all involve Title III.  Title III prohibits discrimination in places of public accommodations, such as businesses.  Second, none of the cases involves a disability-rights organization as a party.  And, most importantly, the crux of the different lawsuits cited by Governor McMaster involve plaintiffs with disabilities suing a store that required them to wear masks while shopping, hardly similar to the factual situation before this Court.  Besides, "[e]ven the CDC's own guidance says that a 'person with a disability who cannot wear a mask, or cannot safely wear a mask, for reasons related to the disability' should not be required to wear a mask."  *Id.* (quoting *Guidance for Wearing Masks*, Ctrs. For Disease Control & Prevention (Apr. 19, 2021)).

At bottom, the Court concludes Proviso 1.108 conflicts with Title II and Section 504 because it fails to accommodate disabled children and denies them the benefits of public schools' programs, services, and activities to which they are entitled.  Consequently, Plaintiffs have met their burden of demonstrating they are likely to succeed on the merits of their failure to make reasonable accommodations claim.  Inasmuch as this issue is dispositive as to the success-on-the-merits factor, the Court need not address the parties' other arguments.

### 2.     *Whether Plaintiffs have established they are likely to suffer irreparable harm in the absence of injunctive relief*

Plaintiffs aver, among other things, "the heightened exposure to a deadly viral contagion—COVID-19[,]" demonstrates they are likely to suffer irreparable harm in the absence of injunctive relief.  Pls.' Mot. at 20.

Governor McMaster, in response, posits "Plaintiffs do not have a high probability of contracting COVID-19 or having a severe outcome."  Governor McMaster Resp. in Opp'n at 32 (internal quotation omitted).  In support of this position, Governor McMaster notes "six children between infancy and ten years old have died of COVID-19 [in South Carolina], and [twelve] children between ten and [twenty] years old have died of COVID-19 [in South Carolina], while there have been about 54,000 and 115,000 cases in those two age ranges [in South Carolina, respectively]."  *Id.*  AG Wilson fails to address this injunctive relief factor.

As noted above, a temporary restraining order and a preliminary injunction should issue only when plaintiffs can establish they are "likely to suffer irreparable harm in the absence of [temporary or] preliminary relief[.]"  *Winter*, 555 U.S. at 20.

Here, as noted by Saul, "[p]ediatric COVID-19 cases comprise an increasing share of overall COVID-19 cases both in the United States and South Carolina."  Saul Decl. ¶ 12.  And, "[b]ased on available data from [forty-eight] states assembled by the American Academy of

Pediatrics, South Carolina has the fourth highest cumulative case rate per 100,000 children in the United States, with over 9,500 recorded pediatric cases per 100,000 children." *Id.* ¶ 13 (footnote omitted).

Governor McMaster, in his citation of the low percentage of adolescent COVID-19 cases that result in death, appears to argue Plaintiffs must show a likely risk of death to demonstrate irreparable harm. But, as adeptly noted by Plaintiffs, the risk of the minor plaintiffs just contracting COVID-19 constitutes irreparable harm. Pls.' Reply at 21–22.

Other courts have recently considered the dangers associated with COVID-19 in schools and have also concluded irreparable harm is demonstrated by the threat of COVID-19. *See The Arc of Iowa v. Reynolds*, Case No. 4:21-cv-00264, 2021 WL 4166728, at * 9 (S.D. Iowa Sept. 13, 2021) ("Because [the disabled] Plaintiffs have shown that [Iowa's] ban on mask mandates in schools substantially increases their risk of contracting the virus that causes COVID-19[,] and that due to their various medical conditions they are at an increased risk of severe illness or death, Plaintiffs have demonstrated that an irreparable harm exists."); *G.S. v. Lee*, Case No. 21-cv-02552-SHL-atc, 2021 WL 4057812, at * (W.D. Tenn. Sept. 3, 2021) ("Plaintiffs have satisfied their burden of showing that irreparable harm will result if the Governor's Executive Order remains in place by including in their pleadings" information regarding the threat of COVID-19 and alleging that '[w]ithout the ability to implement a universal mask mandate, Plaintiffs will continue to be exposed to an increased risk of infection, hospitalization, or death because of COVID-19, or they will be forced to stay home and denied the benefits of an in-person public education.'") (quoting the plaintiffs' complaint).

Accordingly, the Court concludes Plaintiffs have demonstrated they are likely to suffer irreparable harm in the absence of injunctive relief. Inasmuch as this issue is dispositive as to the

likelihood of suffering irreparable harm factor, the Court need not address the parties' other arguments.

### 3. *Whether Plaintiffs have established the balance of equities tip in their favor and injunctive relief is in the public interest*

Plaintiffs aver the "balance of equities tip decisively in [their] favor . . . and an injunction is undoubtedly in the public interest[,]" as persons with disabilities must be treated equally, "thereby maximizing their integration and independence." Pls.' Mot. at 22–23.

Governor McMaster disagrees and argues, among other things, "Courts have no authority to enjoin . . . legislative acts" passed by the General assembly. Governor McMaster Resp. in Opp'n at 34. AG Wilson fails to address these two injunctive relief factors.

When the defendants are governmental entities, the equities and public interest analyses "merge[.]" *Nken v. Holder*, 556 U.S. 418, 435 (2009).

Here, inasmuch as Governor McMaster and AG Wilson are governmental entities, the Court will consider these two factors together. Contrary to Governor McMasters' contention the balance of equities and the public interest is best served by enforcement of South Carolina's Proviso 1.108, the public interest does not lie with enforcement of a state law that violates the laws which Congress has passed to prevent discrimination based on disability. Moreover, there is little harm to enjoining Proviso 1.108 and permitting the public-school districts to satisfy their burden to make reasonable modifications under Title II and Section 504.

Consequently, the Court concludes the balance of equities tips in Plaintiffs' favor and injunctive relief is in the public interest. As this argument is dispositive as to these two factors, the Court need not address the parties' other arguments. As such, the Court will grant Plaintiffs motions for a temporary restraining order and a preliminary injunction against Governor McMaster and AG Wilson.

### C.      Plaintiffs vs. The School Boards, Superintendent Spearman, and Lexington

Inasmuch as the Court has concluded Proviso 1.108 violates Title II and Section 504, and the Court will grant Plaintiffs' motion for a temporary restraining order and a preliminary injunction against Governor McMaster and AG Wilson, it need not address the parties' other arguments as to the School Boards, Superintendent Spearman, and Lexington.  This is so because if Proviso 1.108 is violative of laws passed by Congress, which it is, then any party's enforcement of Proviso 1.108, such as the School Boards, Superintendent Spearman, and Lexington, is illegal. *See generally Marbury v. Madison*, 5 U.S. 137, 177 (1803) ("It is emphatically the province and duty of the judicial departments to say what the law is.").

### D.      Whether the Court must address the parties' arguments regarding the ARPA

Because the Court concludes Plaintiffs are entitled to relief under Title II and Section 504, it need not address the parties' arguments regarding the ARPA.

### E.      Whether the Court should issue the temporary restraining order and preliminary injunction without bond

Plaintiffs request the temporary restraining order and preliminary injunction issue without bond.  None of the Defendants address this issue.

"The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security set by the court[.]"  Rule 65(c).  Nevertheless, the Fourth Circuit has held that "the district court retains discretion to set the bond amount as it sees fit or waive the security requirement." *Pashby*, 709 F.3d at 332.

Because the Defendants are in no way harmed by the issuance of injunctive relief, the Court concludes the temporary restraining order and preliminary injunction should issue without bond.

* * * * *

Some may find it incomprehensible that the General Assembly, by enacting Proviso 1.108, has tied the hands of local school districts to initiate measures they might deem necessary to keep their students safe. But that question, nor the question of whether, as some might suggest, Proviso 1.108 amounts to COVID incompetence, is not before the Court.

Some have also contended that the politicalization, by both opponents and proponents, of the decision to forbid local school districts from requiring students to wear a mask at school is gravely wrong. Literally. But, that question is not before the Court either.

This case presents a legal question, not a political one. And, the question is quite simple: whether the Court will allow Defendants to continue to discriminate against the minor plaintiffs here based on their disabilities. The answer is, of course, a resounding "No!" As such, because the Court has concluded Proviso 1.108 is illegal, under both Title II and Section 504, it must be enjoined.

It is true that the fundamental right of a parent to decide what is best for their child cannot be ignored. It is also generally true that parents are the ones who know their children best, what is best for their health, and their ability to learn. But, those same truths apply equally to all parents, including the parents of children with disabilities, such as the minor plaintiffs here.

Plaintiffs' request that school districts in South Carolina ought to be allowed to choose whether to mandate mask wearing aligns perfectly with Title II's and Section 504's goals of creating a fully inclusive society that protects its most vulnerable, and integrates children with disabilities into our society. And, as the Court has detailed above, several prominent health organizations, who have reported on school age children in desperate conditions, are calling on lawmakers to give school districts the option to implement universal masking in schools. The fact

18

that health organizations such as the Centers for Disease Control and Prevention and the American Academy of Pediatrics recommend mask-wearing lends support to the notion that Plaintiffs' request is reasonable.

It is noncontroversial that children need to go to school. And, they are entitled to any reasonable accommodation that allows them to do so. No one can reasonably argue that it is an undue burden to wear a mask to accommodate a child with disabilities.

Both Title II and Section 504 guarantee individuals with disabilities the same access to an education as those children without disabilities enjoy. But, Proviso 1.108's prohibition on allowing school districts to decide whether to mandate masks is effectively a barrier to such access.

Years ago, ramps were added to schools to accommodate those with mobility-related disabilities so they could access a free public education. Today, a mask mandate works as a sort of ramp to allow children with disabilities access to their schools. Thus, the same legal authority requiring schools to have ramps requires that school districts have the option to compel people to wear masks at school.

And, just as a law forbidding a school district to install ramps in its building would be held to be an affront to Title II and Section 504, so is Proviso 1.108, which proscribes a school district from mandating masks, even when it concludes it is appropriate to do so. Accordingly, masks must, at a minimum, be an option for school districts to employ to accommodate those with disabilities so they, too, can access a free public education.

Governor McMaster, in support of his opposition to Plaintiffs' requests for injunctive relief, cites to Chief Justice Roberts's concurrence in a COVID-related case in which the Supreme Court declined to issue a stay of California's safety guidelines, concluding they failed to discriminate against places of worship in violation of the First Amendment. McMaster Resp. in

Opp'n at 23 (citing to *South Bay United Pentecostal Church v. Newsom*, 140 S.Ct. 1613 (2020) (Roberts, C.J., concurring).

In that opinion, Roberts opines that "[o]ur Constitution principally entrusts the safety and the health of the people to the politically accountable officials of the States to guard and protect." *South Bay United Pentecostal Church*, 140 S.Ct. at 1613 (citation omitted) (internal quotation marks omitted) (internal alteration marks omitted).  "When those officials undertake to act in areas fraught with medical and scientific uncertainties, their latitude must be especially broad."  *Id*. (citation omitted) (internal quotation marks omitted) (internal alteration marks omitted).

"Where those broad limits are not exceeded, they should not be subject to second-guessing by an unelected federal judiciary, which lacks the background, competence, and expertise to assess public health and is not accountable to the people."  *Id*. 1613-14 (citation omitted) (internal quotation marks omitted).

All of that is certainly true, except when such guidelines discriminate against someone. Then, when the Court determines, as it has here, that there is outright discrimination, the enjoining "by an unelected judiciary," *id*., of a statute passed by "politically accountable officials[,]" *id*., is particularly and perfectly proper.

The Court takes its cue from the Supreme Court's decision in *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S.Ct. 63 (2020), which deals a fatal blow to McMaster's arguments.  In that case, the plaintiffs asked for, and the Supreme Court granted, their application to enjoin the enforcement of the Governor of New York's emergency Executive Order imposing occupancy restrictions on houses of worship during COVID-19 pandemic.  *Id*. at 65-66.  According to the Supreme Court, the Executive Order violated the First Amendment. *Id* at 7.

There, the Supreme Court held that COVID measures cannot discriminate on the basis of religion. It then logically follows that, if presented with the question as to whether COVID measures can discriminate against those with disabilities, it would give the same answer: No.

"[T]he liberty secured by the Constitution of the United States to every person within its jurisdiction does not import an absolute right in each person to be, at all times and in all circumstances, wholly freed from restraint. There are manifold restraints to which every person is necessarily subject for the common good." *Jacobson v. Commonwealth of Mass.*, 197 U.S. 11, 26 (1905). Thus, in a health emergency such as this, it is the government's burden to navigate the tension between protecting the public health and safety, while, at the same time, preserving individual rights and liberties.

It cannot be seriously debated that the government's broad powers to protect the public during a declared emergency is well settled. *See id.* But, these emergency powers exist against the backdrop of individual rights and liberties, including the right to be free from discrimination. Such rights are sacrosanct.

Consequently, there is an inherent tension between the exercise of one's personal freedoms and rights, on the one hand, and the government's protecting the health of the public, on the other. This case presents the added burden of making sure the government's public health measures are not infringing against one's right to be free from discrimination. And, as the Supreme Court did in *Roman Catholic Diocese of Brooklyn v. Cuomo*, the Court must call the government out when it finds its public health measures are discriminatory.

This Court has always been extremely deferential to governmental decision-making. It is not called to make law, but to interpret it. And, that is exactly what it has done here.

This is not a close call.  The General Assembly's COVID measures disallowing school districts from mandating masks, as found in Proviso 1.108, discriminates against children with disabilities.  Thus, with this Order, the Court will enjoin its enforcement.

## V.     CONCLUSION

Wherefore, based on the foregoing discussion and analysis, it is the judgment of the Court Plaintiffs' motions for a temporary restraining order and a preliminary injunction are **GRANTED**, and Defendants are enjoined from enforcing Proviso 1.108, which is violative of Title II and Section 504.

Plaintiffs shall not be required to post bond.

**IT IS SO ORDERED.**

Signed this 28th day of September 2021, in Columbia, South Carolina.

s/ Mary Geiger Lewis
MARY GEIGER LEWIS
UNITED STATES DISTRICT JUDGE