## NO. 21-2070

### In The

# United States Court of Appeals

### For The Fourth Circuit

DISABILITY RIGHTS SOUTH CAROLINA; ABLE SOUTH CAROLINA; AMANDA MCDOUGALD SCOTT, individually and on behalf of P.S., a minor; MICHELLE FINNEY, individually and on behalf of M.F., a minor; LYUDMYLA TSYKALOVA, individually and on behalf of M.A., a minor; EMILY POETZ, individually and on behalf of L.P., a minor; SAMANTHA BOEVERS, individually and on behalf of P.B., a minor; TIMICIA GRANT, individually and on behalf of E.G., a minor; CHRISTINE COPELAND, individually and on behalf of L.C., a minor; HEATHER PRICE, individually and on behalf of H.P., a minor; and CATHY LITTLETON, individually and on behalf of Q.L., a minor,

*Plaintiffs–Appellees,*

**v.**

HENRY MCMASTER, in his official capacity as Governor of the State of South Carolina; and ALAN WILSON, in his official capacity as Attorney General of South Carolina

*Defendants–Appellants,*

AND

MOLLY SPEARMAN, in her official capacity as State Superintendent of Education; GREENVILLE COUNTY SCHOOL BOARD; HORRY COUNTY SCHOOL BOARD; LEXINGTON COUNTY SCHOOL BOARD ONE; OCONEE COUNTY SCHOOL BOARD; DORCHESTER COUNTY SCHOOL BOARD TWO; CHARLESTON COUNTY SCHOOL BOARD; and PICKENS COUNTY SCHOOL BOARD,

*Defendants.*

### ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF SOUTH CAROLINA

————————

### EMERGENCY MOTION TO STAY INJUNCTION PENDING APPEAL AND FOR ADMINISTRATIVE STAY

————————

*(Counsel listed on following page)*

Alan Wilson
*Attorney General*
Robert D. Cook
*Solicitor General*
J. Emory Smith, Jr.
*Deputy Solicitor General*
OFFICE OF THE ATTORNEY GENERAL
P.O. Box 11549
Columbia, South Carolina 29211
(803) 734-3680
rcook@scag.gov
esmith@scag.gov


*Counsel for*
*Attorney General Wilson*

Thomas A. Limehouse, Jr.
*Chief Legal Counsel*
Wm. Grayson Lambert
*Senior Legal Counsel*
Michael G. Shedd
*Deputy Legal Shedd*
OFFICE OF THE GOVERNOR
South Carolina State House
1100 Gervais Street
Columbia, South Carolina 29201
(803) 734-2100
tlimehouse@governor.sc.gov
glambert@governor.sc.gov
mshedd@governor.sc.gov


*Counsel for Governor McMaster*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................ ii

INTRODUCTION ................................................................................ 1

JURISDICTIONAL STATEMENT .............................................................. 3

STATEMEMT OF THE CASE .................................................................. 3

STANDARD OF REVIEW ...................................................................... 5

ARGUMENT ...................................................................................... 5

    I.  The Governor and Attorney General are likely to prevail on the merits ........ 5

        A. The district court's logic results in a federal mask mandate in schools .... 5

        B. Appellees do not have a private right of action for their disparate-impact and failure-to-accommodate claims under Title II and §504 .................... 8

        C. The district court gave insufficient deference to the General Assembly's decision about masks in schools ................................................ 14

    II.  The other factors support a stay .................................................. 18

CONCLUSION .................................................................................. 21

## <u>TABLE OF AUTHORITIES</u>

<u>**Cases**</u>

*Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*,
___ S. Ct. ___, No. 21A23, <u>2021 WL 3783142</u> (U.S. Aug. 26, 2021) .................8

*Alexander v. Choate*,
<u>469 U.S. 287</u> (1985) ........................................................................13

*Alexander v. Sandoval*,
<u>532 U.S. 275</u> (2001) ............................................................... 9, 12, 13

*Arbogast v. Kan. Dep't of Labor*,
<u>789 F.3d 1174</u> (10th Cir. 2015) ......................................................12

*Bacon v. City of Richmond, Va.*,
<u>475 F.3d 633</u> (4th Cir. 2007) ..........................................................6

*Baird ex rel. Baird v. Rose*,
<u>192 F.3d 462</u> (4th Cir. 1999) ..........................................................7

*Cmty. Television of S. Cal. v. Gottfried*,
<u>459 U.S. 498</u> (1983) ........................................................................10

*Doe v. BlueCross BlueShield of Tenn., Inc.*,
<u>926 F.3d 235</u> (6th Cir. 2019) ..................................................... 11, 13

*Doe v. CVS Pharmacy, Inc.*,
<u>982 F.3d 1204</u> (9th Cir. 2020) ........................................................8

*Exxon Mobil Corp. v. Allapattah Servs., Inc.*,
<u>545 U.S. 546</u> (2005) ........................................................................13

*Fry v. Napoleon Cmty. Sch.*,
<u>137 S. Ct. 743</u> (2017) ......................................................................7

*Griggs v. Duke Power Co.*,
<u>401 U.S. 424</u> (1971) ........................................................................11

*Gross v. FBL Fin. Servs., Inc.*,
    557 U.S. 167 (2009) ............................................................... 12

*Hannah P. v. Coats*,
    916 F.3d 327 (4th Cir. 2019) ................................................. 16

*Husted v. A. Philip Randolph Inst.*,
    138 S. Ct. 1833 (2018) .......................................................... 10

*J.I. Case Co. v. Borak*,
    377 U.S. 426 (1964) ............................................................... 13

*Long v. Robinson*,
    432 F.2d 977 (4th Cir. 1970) ................................................... 5

*Maryland v. King*,
    567 U.S. 1301 (2012) ............................................................. 19

*Nat'l Fed'n of the Blind v. Lamone*,
    813 F.3d 494 (4th Cir. 2016) ................................................... 5

*Payan v. Los Angeles Cmty. Coll. Dist.*,
    11 F.4th 729 (9th Cir. 2021) ............................................... 9, 12

*Perdue v. Sanofi-Aventis U.S., LLC*,
    999 F.3d 954 (4th Cir. 2021) ................................................. 16

*Raytheon Co. v. Hernandez*,
    540 U.S. 44 (2003) ................................................................. 12

*Robinson v. Kansas*,
    295 F.3d 1183 (10th Cir. 2002) ............................................. 12

*Roman Cath. Diocese of Brooklyn v. Cuomo*,
    141 S. Ct. 63 (2020) .............................................................. 17

*S. Bay United Pentecostal Church v. Newsom*,
    140 S. Ct. 1613 (2020) ................................................. 6, 17, 19

*Sellers by Sellers v. Sch. Bd. of City of Mannassas, Va.*,
    141 F.3d 524 (4th Cir. 1998) ...............................................................10

*Sheely v. MRI Radiology Network, P.A.*,
    505 F.3d 1173 (11th Cir. 2007) ...........................................................10

*Smith v. City of Jackson*,
    544 U.S. 228 (2005)...............................................................................11

*South Dakota v. Dole*,
    483 U.S. 203 (1987)...............................................................................18

*Tex. Dep't of Hous. & Cmty. Affs. v. Inclusive Communities Project, Inc.*,
    576 U.S. 519 (2015)...............................................................................11

*Tex. Educ. Agency v. U.S. Dep't of Educ.*,
    992 F.3d 350 (5th Cir. 2021) ...............................................................18

*United States v. L. A. Tucker Truck Lines, Inc.*,
    344 U.S. 33 (1952)................................................................................14

*United States v. Lopez*,
    514 U.S. 549 (1995)................................................................................8

*Wilson v. City of Columbia*,
    ___ S.E.2d ___, No. 2021-000889, 2021 WL 3928992 (S.C. Sept. 2, 2021) ....1, 3

*Winter v. Natural Res. Def. Council, Inc.*,
    555 U.S. 7 (2008)..................................................................................20

*Ziglar v. Abbasi*,
    137 S. Ct. 1843 (2017)..........................................................................13

**Statutes**

28 U.S.C. §1292(a)(1)....................................................................................3

29 U.S.C. §623 .............................................................................................11

29 U.S.C. §794(a) ...................................................................7, 10

29 U.S.C. §794a(a)(2) .................................................................9

42 U.S.C. §12112(a) ..................................................................11

42 U.S.C. §12112(b)(3)(A) ............................................................11

42 U.S.C. §12131 ......................................................................12

42 U.S.C. §12132 ...................................................................7, 10

42 U.S.C. §12133 ......................................................................9

42 U.S.C. §2000e-2 ...................................................................11

42 U.S.C. §3604 ......................................................................11


**Rule**

Fed. R. App. P. 8(a)(2)(A)(ii) ........................................................3


**Regulations**

28 C.F.R. §35.101 .....................................................................7

28 C.F.R. §35.130(b)(7) ...............................................................7

34 C.F.R. §104.1 ......................................................................7


**Other Authorities**

2021 S.C. Acts No. 94, Part IB, §1.108 ...............................................3

Br. of Appellants, *Nat'l Fed. for the Blind v. Lamone*,
   2015 WL 295743 (4th Cir. Jan. 23, 2015) ........................................14

v

*County-Level Data for COVID-19*, S.C. Dep't Health & Envtl. Control, https://tinyurl.com/ac62h5hw ........................................................................4, 20

Dana Goldstein, *In Britain, Young Children Don't Wear Masks in Schools*, N.Y. Times (Aug. 27, 2021), https://tinyurl.com/b4d7cz5s..........................................16

Jenna Gettings, et al., *Mask Use and Ventilation Improvements to Reduce COVID-19 Incidence in Elementary Schools*, Ctrs. for Disease Control & Prevention (May 28, 2021), https://tinyurl.com/4ftx4asx........................................................15

Jeremy Howard, *et al.*, *An Evidence Review of Face Masks Against COVID-19*, 118 PNAS 1 (2021), https://tinyurl.com/yv5w8z94.............................................15

Joseph Bustos, *Why SC's McMaster Says Kershaw County Schools Are a "Model" District in Slowing COVID*, The State (Sept. 15, 2021), https://tinyurl.com/2cavm49s ..............................................................................16

Merriam-Webster (2021) ................................................................. 10, 20

*The Federalist No. 78* (Hamilton) (C. Rossiter & C. Kelser eds. 2003) .................21

## **INTRODUCTION**

COVID-19 has provoked intense debates on a range of topics. Perhaps no debate has been as intense as the one over whether masks should be required in public schools. In South Carolina, the General Assembly addressed this debate by enacting a proviso that prohibits any state-authorized or -appropriated funds from being used to announce or enforce a mask mandate in schools.

As these debates often do, this one moved from the political arena to the courtroom. The South Carolina Supreme Court unanimously upheld the proviso against state-law challenges. *See Wilson v. City of Columbia*, ___ S.E.2d ___, No. 2021-000889, 2021 WL 3928992 (S.C. Sept. 2, 2021). In doing so, the court noted that the General Assembly enacted the Proviso "in good faith," concluding that the legislature endeavored to settle this policy debate by "elect[ing] to leave the ultimate decision to parents," "[w]hile allowing school districts flexibility to encourage one policy or the other." *Id.* at *1. Not long after the state court case was filed, Appellees attacked the proviso in federal court, asserting claims under Title II of the Americans with Disabilities Act ("ADA") and §504 of the Rehabilitation Act of 1973.

The district court granted their motion for a temporary restraining order and preliminary injunction. That decision was an abuse of discretion because it is replete with legal errors. *First*, the district court ignored the logical end of Appellees' claims: Title II and §504 effectively impose a federal mask mandate in all public

schools across the country. Such a sweeping reading of those statutes is untenable. *Second*, the district court wrongly concluded that this Court has already decided Title II and §504 permit disparate-impact and failure-to-accommodate claims. This Court has not done so, and both Supreme Court precedent and the statutory text preclude such claims. *Third*, the district court showed insufficient deference to the General Assembly's decision about masks in schools, wading into the debate to pick winners and losers in direct conflict with the Chief Justice's admonition in *South Bay*. *Fourth*, the district court's irreparable-harm analysis makes no sense, as it reasoned that "just contracting COVID-19 constitutes irreparable harm." App.243.

Given these shortcomings in the district court's analysis, the Governor and Attorney General are likely to prevail on appeal. That vindication, however, cannot wait. The proviso is in effect for only this school year. By the time this appeal could be decided in the ordinary course, the school year may well be over. A stay pending appeal is necessary to avoid the proviso being wrongly enjoined for the entire school year.

The Governor and Attorney General therefore seek a stay of the preliminary injunction pending appeal and an administrative stay while the Court decides this Motion. Because students are in school now and the preliminary injunction may lead to (hopefully temporary) changes in mask policies across the State, the Governor and Attorney General ask this Court to decide this Motion as quickly as possible.

## JURISDICTIONAL STATEMENT

The district court granted a preliminary injunction on September 28, 2021. App.250. This Court has jurisdiction under 28 U.S.C. §1292(a)(1). Seeking a stay from the district court is impracticable, given the language of the district court's order and the fact that children are currently in school. *See* Fed. R. App. P. 8(a)(2)(A)(ii).

## STATEMENT OF THE CASE

In the 2021-22 Appropriations Act, the General Assembly prohibited school districts in this State from using appropriated or authorized funds to announce or enforce a mask mandate:

> No school district, or any of its schools, may use any funds appropriated or authorized pursuant to this act to require that its students and/or employees wear a facemask at any of its education facilities. This prohibition extends to the announcement or enforcement of any such policy.

2021 S.C. Acts No. 94, Part IB, §1.108 ("Proviso"). The Proviso has been challenged in state court but remains in effect because it is a valid exercise of the General Assembly's legislative power. *See Wilson*, 2021 WL 3928992, at *1.

Appellees in this case are nine parents of public-school students with disabilities and two disability-rights groups. *See* App.24-26. They contend that the individual Appellees' children are high risk for COVID-19, including the Delta variant. *See* App.32-34. With a rising number of COVID-19 cases as schools

returned,[1] they allege their children cannot safely return to in-person learning if masks are not mandated for everyone in schools, including students, teachers, and staff. *See* App.40-45. They demand that schools be allowed to adopt mask mandates, based on recommendations from the Centers for Disease Control and Prevention ("CDC") and S.C. Department of Health and Environmental Control ("DHEC"). *See* App.22.

Based on these allegations, Appellees asserted three claims. Their first two are similar, under Title II and §504. *See* App.45-49. Their third claim is based on the American Rescue Plan Act of 2021 ("ARPA"), claiming that a section of that act preempts the Proviso. *See* App.49-52. Appellees seek declaratory and injunctive relief. *See* App.52.

The district court granted Appellees' request for injunctive relief without a hearing. *See* App.229-250. Governor McMaster and General Wilson promptly appealed, and now they seek from this Court a stay of the preliminary injunction pending appeal.

---

[1] Cases are now trending down. The statewide seven-day moving average is down almost 50 percent as of September 27 from its September 6 high. *See County-Level Data for COVID-19*, S.C. Dep't Health & Envtl. Control, https://tinyurl.com/ac62h5hw (last accessed Sept. 29, 2021).

## STANDARD OF REVIEW

Whether an injunction should be stayed pending appeal is a four-part inquiry. An appellant must show "(1) that he will likely prevail on the merits of the appeal, (2) that he will suffer irreparable injury if the stay is denied, (3) that other parties will not be substantially harmed by the stay, and (4) that the public interest will be served by granting the stay." *Long v. Robinson*, 432 F.2d 977, 979 (4th Cir. 1970).

## ARGUMENT

**I.     The Governor and Attorney General are likely to prevail on the merits.**

**A.     The district court's logic results in a federal mask mandate in schools.**

Title II and §504 are similar in their scope and their elements. Thus, these claims are often considered together. *Se Nat'l Fed'n of the Blind v. Lamone*, 813 F.3d 494, 503 n.4 (4th Cir. 2016). Although Appellees cite myriad provisions of the Code of Federal Regulations specific to each claim, *see* App.45-49, both claims essentially boil down to this syllogism: Schools are not safe without masks. Disabled students cannot attend a school that is not safe. Therefore, disabled students cannot attend schools without universal mask mandates.

Take that logic, and play out where Appellees' claims ultimately end. For now, Appellees target and the district court enjoined only the Proviso. *See* App.231. In this situation, school districts are free to impose a mask mandate without regard

to the Proviso's restrictions. They are also, under the district court's injunction, free *not* to impose a mask mandate.

But if a school district does not impose a mask mandate, Appellees' syllogism is still there. Except now, the primary defendant will necessarily be the school district, not state officials. In other words, under Appellees' theory, schools are safe for disabled students only when masks are mandated for everyone. Thus, for Appellees, enjoining the Proviso cannot be enough. A school district *must* then impose a mask mandate; otherwise, the district is violating Title II and §504. *Cf. Bacon v. City of Richmond, Va.*, 475 F.3d 633, 638 (4th Cir. 2007) (remedies are available against a defendant who wrongs a plaintiff). Hence, the district court erred in accepting Appellees' assertion that they really want to leave the question of masks to school districts. *See* App.246. Appellees' logic ultimately results in Title II and §504 being, in effect, a federal mask mandate for schools across the country.[2]

---

[2] Appellees might concede that, at some point, the spread of COVID-19 could decline enough that disabled students could attend schools where everyone was not required to wear masks, making any federally imposed mandate temporary. This concession only highlights other problems with Appellee's theory, most notably the line-drawing problem. How much of a decline is enough? When is the risk of spread in school low enough? These are precisely the types of questions "fraught with medical and scientific uncertainties" about "safety and health of the people" that an "unelected federal judiciary . . . lacks the background, competence, and expertise to assess public health" to answer. *S. Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613, 1613-14 (2020) (Roberts, C.J., concurring in denial of application for injunctive relief).

This is an untenable and illogical result. These two "statutes aim to root out disability-based discrimination." *Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 756 (2017). That is, no doubt, a laudable goal. But a noble purpose does not mean these statutes have no limit. Until now, neither statute has ever been interpreted so broadly as to create and impose such a sweeping federal decree.

For good reason. The plain text of the statutes prohibit only discrimination "by reason of" a disability. 42 U.S.C. §12132 (Title II); *see also* 29 U.S.C. §794(a) ("solely by reason of" a disability). A facially neutral prohibition on using state funds to impose mask mandates does not discriminate against anyone because of a disability. *See Baird ex rel. Baird v. Rose*, 192 F.3d 462, 468 n.6 (4th Cir. 1999) ("application of a neutral rule that applies to disabled and nondisabled individuals alike cannot be considered discrimination on the basis of disability").

Nor do the regulations justify a nationwide school mask mandate.[3] Since they were enacted, Title II and §504 have, like many federal laws, spawned a deluge of federal regulations. *See, e.g.*, 28 C.F.R. §35.101 *et seq.* (Title II); 34 C.F.R. §104.1 *et seq.* (§504). Most relevant here is the concept of reasonable modification to accommodate people with disabilities. *See, e.g.*, 28 C.F.R. §35.130(b)(7); App.239-41. But the district court did not order a modification. Rather, the district court

---

[3] In fact, the regulations do not even let Appellees bring these claims. *See infra* Part I.B.

vacated the State's policy in the Proviso, and now Appellees (as well as other plaintiffs around the country) will push school boards to effectively reverse the Proviso and mandate masks in schools under threat of similar lawsuits.

Given that "education is a traditional concern of the States," *United States v. Lopez*, 514 U.S. 549, 580 (1995) (Kennedy, J., concurring), any federal intervention to require more than 50 million public-school students, as well as all teachers and staff, to wear masks must be more direct than a novel interpretation of decades' old statutes. The Supreme Court has already rejected backdoor attempts to expand federal law during this pandemic. *See Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, ___ S. Ct. ___, No. 21A23, 2021 WL 3783142, at *1 (U.S. Aug. 26, 2021) (vacating stay of injunction pending appeal of CDC's eviction moratorium because "applicants are virtually certain to succeed on the merits of their argument that the CDC has exceeded its authority"). This Court should do the same here.

## B.    Appellees do not have a private right of action for their disparate-impact and failure-to-accommodate claims under Title II and §504.

Before getting to the reasons why these claims do not exist under Title II and §504, it's worth noting that the Supreme Court is taking up this question this Term. The Ninth Circuit recently interpreted §504 as permitting disparate-impact claims. *See Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204 (9th Cir. 2020). The Supreme Court has granted certiorari to decide whether §504 does so. *See CVS Pharmacy, Inc. v. Doe*, No. 20-1374 (U.S.). For at least six reasons, the district court erred in

8

concluding Appellees have a private right of action for disparate-impact and unintentional-failure-to-accommodate theories under Title II and §504.

*First*, there are the enforcement provisions for Title II and §504. Title II provides a person with the "remedies, procedures, and rights set forth in" the Rehabilitation Act to enforce a violation of Title II. 42 U.S.C. §12133. The Rehabilitation Act, in turn, provides a person with the "remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964" to enforce a violation of §504. 29 U.S.C. §794a(a)(2). In other words, these statutes create a "domino effect." *Payan v. Los Angeles Cmty. Coll. Dist.*, 11 F.4th 729, 2021 WL 3730692, at *12 (9th Cir. 2021) (Lee, J., dissenting). The Supreme Court has held that Title VI of the Civil Rights Act does not create a private right of action for disparate-impact claims.[4] *See Alexander v. Sandoval*, 532 U.S. 275, 284-91 (2001). So "[i]f Title VI does not allow a disparate impact claim, then the Rehabilitation Act cannot (because it derives its remedies and rights from Title VI), and the ADA cannot either (because it, in turn, relies on the Rehabilitation Act for its remedies and rights)." *Payan*, 2021 WL 3730692, at *12.

---

[4] The Supreme Court concluded that §601 of Title VI (prohibiting discrimination "on the ground of" race, color, or national origin) does not outlaw disparate-impact discrimination and that regulations enacted under §602 (that implement §601) could not create a private right of action for something Congress had not actually prohibited by statute.

*Second*, there is the plain text of Title II and §504. Title II prohibits discrimination "by reason of" a disability, 42 U.S.C. §12132, and §504 prohibits it "solely by reason of" a disability, 29 U.S.C. §794(a). "By reason of" means "because of." *By reason of*, Merriam-Webster (2021), https://tinyurl.com/cn5wm7rd; *see also Husted v. A. Philip Randolph Inst.*, 138 S. Ct. 1833, 1842 (2018) ("And 'by reason of' is a 'quite formal' way of saying 'because of.'" (cleaned up)). For an act to be "because of" a disability, the disability must motivate—not simply be the result of— that act. *Cf. Sellers by Sellers v. Sch. Bd. of City of Mannassas, Va.*, 141 F.3d 524, 529 (4th Cir. 1998) (in "the context of education of handicapped children," "either bad faith or gross misjudgment should be shown before a §504 violation can be made out").

*Third*, there is the similarity between the text of Title II and §504 and the text of Title VI. Both Title II and §504 have rights-creating language that mirrors §601 of Title VI. *See Cmty. Television of S. Cal. v. Gottfried*, 459 U.S. 498, 509 (1983) ("§504 was patterned after Title VI"); *Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173, 1191 n.19 (11th Cir. 2007) ("Title II . . . was modeled after §601"). Because §601's language does not create a private right of action for disparate-impact claims, neither can Title II's or §504's language.

*Fourth*, there is the contrast between the language of Title II and §504 and the language Congress uses when Congress has prohibited disparate-impact

discrimination. To prohibit disparate-impact discrimination, Congress "has relied on language like 'otherwise adversely affect' or 'otherwise make unavailable,' which refers to the consequences of an action rather than the actor's intent." *Doe v. BlueCross BlueShield of Tenn., Inc.*, 926 F.3d 235, 242 (6th Cir. 2019). The Age Discrimination in Employment Act ("ADEA"), for instance, uses "otherwise adversely affect," 29 U.S.C. §623, and the Supreme Court pointed to that language to hold that the ADEA permits disparate-impact claims, *see Smith v. City of Jackson*, 544 U.S. 228 (2005). The same is true of Title VII of the Civil Rights Act, *see* 42 U.S.C. §2000e-2; *Griggs v. Duke Power Co.*, 401 U.S. 424 (1971), and the Fair Housing Act, *see* 42 U.S.C. §3604; *Tex. Dep't of Hous. & Cmty. Affs. v. Inclusive Communities Project, Inc.*, 576 U.S. 519 (2015). Unlike these statutes, Title II and §504 do not use sweeping language like "otherwise affected." *See Doe*, 926 F.3d at 242 (§504 does not create a private right of action for disparate-impact claims).

*Fifth*, there are the internal differences in the ADA. Title I of the ADA focuses on employment and prohibits "discriminat[ion] against a qualified individual on the basis of disability in" various job-related activities. 42 U.S.C. §12112(a). Title I then goes on to define "discriminate" to include "utilizing standards, criteria, or methods of administration that *have the effect of* discrimination on the basis of disability," much like the ADEA. *Id.* §12112(b)(3)(A) (emphasis added). That definition means that disparate-impact claims exist under Title I. *See Raytheon Co. v. Hernandez*, 540

U.S. 44, 53 (2003). Title II, on the other hand, has no provision defining "discrimination" as an act that "has the effect of." *See* 42 U.S.C. §12131 (definitions for Title II). Title II prohibits only discrimination "by reason of such disability," which (as discussed already) does not include disparate-impact claims.

*Sixth*, there is no way for Appellees to rely on the regulations implementing Title II or §504 to create a private right of action. Like the Department of Justice in *Sandoval*, the Department of Education cannot create private rights of action under Title II and §504 for something Congress did not prohibit by statute. *See Sandoval*, 532 U.S. at 291 ("Agencies may play the sorcerer's apprentice but not the sorcerer himself.").

Arguments to the contrary are unpersuasive. Most often, courts (like the district court here, *see* App.238) have relied on what they deem to be the statutory purpose to find a private right of action exists. *See, e.g.*, *Payan*, 2021 WL 3730692, at *4-7 (majority op.); *Robinson v. Kansas*, 295 F.3d 1183, 1187 (10th Cir. 2002), *abrogated on other grounds by Arbogast v. Kan. Dep't of Labor*, 789 F.3d 1174 (10th Cir. 2015). Although purposivism may have once carried weight in statutory interpretation, it does not now. Instead, the judicial inquiry "must focus on the text." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 175 (2009). To conclude Title II and §504 create a private right of action for disparate-impact and failure-to-accommodate claims, one must "overlook[] the essentially identical text" of these

12

statutes and Title VI and "elevat[e] the purpose" of the statutes over the text.[5] *Doe*, 926 F.3d at 243.

Courts cannot substitute their judgment for Congress's to imply a private right of action. Decades ago, the Supreme Court believed that it was "the duty of the courts to be alert to provide such remedies as are necessary to make effective the congressional purpose." *J.I. Case Co. v. Borak*, 377 U.S. 426, 433 (1964). No longer. The Court has "sworn off the habit of venturing beyond Congress's intent," and the Court has made clear it "will not accept [an] invitation to have one last drink." *Sandoval*, 532 U.S. at 287. Now, courts "assume that Congress will be explicit if it intends to create a private cause of action." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1856 (2017).

Without anything explicit from Congress, there can be no disparate-impact or unintentional-failure-to-accommodate claims under Title II or §504, at least post-*Sandoval*. That may or may not be good policy, but that is a choice for Congress to make. *See Sandoval*, 532 U.S. at 286-87. This case involves no allegations of any intentional discrimination by the Governor, the Attorney General, or anyone else.

---

[5] That assumes the purpose is even as broad as these courts claim. For example, in *Alexander v. Choate*, 469 U.S. 287, 296 n.13 (1985), the Court's dicta on the scope of §504 was based on a dubious reading of legislative history that reflected the unhelpful tendency in legislative history to "look[] over a crowd and pick[] out your friends." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 568 (2005).

*See* App.21-52. Accordingly, the district court's conclusion that Appellees are likely to succeed on their Title II and §504 claims cannot stand.

Notably, the district court never engaged with any of these arguments. Instead, the district court said it "need look no further than *Lamone*" to conclude Appellees have a private right of action. App.238. The district court put far more weight on *Lamone* than it can bear. That case is about absentee voting and blind voters, and it *never* discusses a private right of action. The district court instead quoted dicta about the purpose of Title II and §504, while ignoring or declining to engage with the statutory text. Moreover, the defendants in *Lamone* never even raised a private-right-of-action argument. *See* Br. of Appellants, 2015 WL 295743 (4th Cir. Jan. 23, 2015). When an issue is not raised, briefed, or discussed in the opinion, the decision cannot be binding precedent on that issue. *See United States v. L. A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 38 (1952). Thus, *Lamone* does not stand for the proposition the district court said it does.

### C. The district court gave insufficient deference to the General Assembly's decision about masks in schools.

Another prominent flaw in the district court's injunction is that court's implicit conclusion that universal mask mandates are necessary for schools to be safe. *See* App.240.

To be sure, Governor McMaster and Attorney General Wilson have consistently encouraged South Carolinians to heed applicable public health

guidance, which has included wearing masks in public settings where it is not possible to practice social distancing, and they have encouraged eligible and willing individuals to get vaccinated. But the debate over masks goes beyond politics and beyond schools. Even public health guidance has been divided on the need for, or the effectiveness of, mask mandates. *See, e.g.*, Jenna Gettings, et al., *Mask Use and Ventilation Improvements to Reduce COVID-19 Incidence in Elementary Schools*, Ctrs. for Disease Control & Prevention (May 28, 2021), https://tinyurl.com/4ftx4asx (difference in the rate of COVID-19 cases "in schools that required mask use among students was not statistically significant compared with schools where mask use was optional").

Beyond the debate over the efficacy of masks in certain contexts, there are other concerns about mandating them, particularly in schools. One example of this harm comes from a study on which Appellees' own expert relies. *See* App.69 (citing Jeremy Howard, *et al.*, *An Evidence Review of Face Masks Against COVID-19*, 118 PNAS 1 (2021), https://tinyurl.com/yv5w8z94). That study observed that an issue impacting "schools" "is that over a full day's use, masks may become wet, or dirty." Howard, *supra*, at 9. Studies of this issue in healthcare settings have "found that respiratory pathogens on the outer surface of the used medical masks may result in self-contamination, and noted that the risk is higher with longer duration of mask use." *Id.* (internal quotation marks omitted). Another example is the potential delays

15

to social development for children if everyone's face is covered. For that reason, decisionmakers from both political parties in Great Britain supported using other methods to slow the spread of COVID-19 in their schools. *See* Dana Goldstein, *In Britain, Young Children Don't Wear Masks in Schools*, N.Y. Times (Aug. 27, 2021), https://tinyurl.com/b4d7cz5s.

Plus, the district court's analysis ignored that mitigation efforts other than mandating masks are proving effective. Consider the Kershaw County School District in South Carolina, which has had great success in keeping schools open to students. This district "checks temperatures as people come into buildings, limits the number of visitors, keeps desks at least 3 feet apart, uses seating charts on buses to determine close contacts, disinfects buildings every day and uses plexiglass dividers. [The district also uses] isolation rooms for anyone who displays any symptoms." Joseph Bustos, *Why SC's McMaster Says Kershaw County Schools Are a "Model" District in Slowing COVID*, The State (Sept. 15, 2021), https://tinyurl.com/2cavm49s. Because other modifications exist, the district court was wrong to enjoin the Proviso and insist on that districts be able to mandate masks. *Cf. Hannah P. v. Coats*, 916 F.3d 327, 337 (4th Cir. 2019) ("the employer has the ultimate discretion to choose between effective accommodations" (internal quotation mark omitted)); *Perdue v. Sanofi-Aventis U.S., LLC*, 999 F.3d 954, 959 (4th Cir. 2021) (similar).

The district court took umbrage at the suggestion it must defer to the decisions of the politically accountable branches, insisting it had the authority to decide whether the Proviso violated federal law (and yet at the same time was somehow also being deferential). *See* App.246-49. To be sure, the district court (like every Article III court) has the constitutional authority to resolve cases and controversies. The Governor and Attorney General never suggested otherwise. What they argued was that the scope of judicial authority here is narrow, and what the district court missed was how much deference it owed the General Assembly in analyzing Appellees' claims. "Our Constitution principally entrusts the safety and health of the people to the politically accountable officials of the States to guard and protect." *S. Bay*, 140 S. Ct. at 1613-14 (cleaned up). These officials have "especially broad" "latitude" when they "act in areas fraud with medical and scientific uncertainties." *Id.* In making decisions involving medical and scientific uncertainties, officials "should not be subject to second-guessing by an unelected federal judiciary." *Id.* at 1614 (cleaned up); *see also Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 74 (2020) (Kavanaugh, J., concurring) (while not abdicating their roles, federal courts nevertheless "must afford substantial deference to state and local authorities about how best to balance competing policy considerations during the pandemic").[6]

---

[6] The district court actually cited this case as supporting its decision, but the distinctions in that case and this one are plentiful. Most notably, that case involved a constitutional right and a government edict that explicitly discriminated against

17

In other words, decisions by politically accountable officials during this pandemic may be subject to judicial review, but that review must be particularly deferential when the scientific question being debated is subject to dispute, as well as parental input.

The district court's review here was anything but deferential. It took sides in the debate on mask mandates in schools, declaring one side is right and the other is wrong. *That* is what *South Bay* forbids. The injunction is therefore flawed, and Appellees are not likely to succeed on the merits of their claims.[7]

## II.    The other factors support a stay.

The three other considerations can be addressed more quickly.

*First*, the Governor and Attorney General, as well as the State, will be irreparably harmed absent a stay. The Supreme Court has recognized that whenever "a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S.

---

religious groups.

[7] Based on its conclusion on the Title II and §504 claims, the district court declined to rule on Appellees' preemption claim. *See* App.245. That claim, however, is not an alternative reason to affirm. A condition on receiving federal funds must be both unambiguous and from Congress. *See South Dakota v. Dole*, <u>483 U.S. 203, 206</u> (1987). Appellees' claim relies on an interim final rule from the U.S. Department of Education that (by the Secretary's own admission) "clarif[ies]" ARPA. *See* App.51-52, 209. If a regulation is necessary to establish a clear condition, then Congress did not impose a condition that satisfies *Dole*. *See Tex. Educ. Agency v. U.S. Dep't of Educ.*, <u>992 F.3d 350, 361</u> (5th Cir. 2021).

1301, 1303 (2012) (Roberts, C.J., in chambers). Here, the Proviso was duly enacted by the General Assembly, and it represents the debated decision of the People's representatives on one of the most contentious issues of this pandemic. *Cf. S. Bay*, 140 S. Ct. at 1613-14 (noting the leeway elected officials have in responding to evolving public-health issues).

*Second*, Appellees will not be substantially harmed by a stay, for the same reasons that the district court's analysis of irreparable harm is flawed. *See* App.243-44. No one disputes that COVID-19 might result in death or hospitalization and that such a result is an irreparable harm. But according to the district court, death or hospitalization isn't the issue. The district court concluded that "the risk" of Appellees "just contracting COVID-19 constitutes irreparable harm." App.243.

This conclusion is flawed for multiple reasons. One, more than 40 million people have contracted COVID-19, and most of them have had minor, if any, symptoms. Presumably some of those people have various conditions that, like Appellees, make them high risk under the CDC's guidance. Treating contracting a disease from which the overwhelming majority of people recover quickly and have minor symptoms as irreparable harm opens Pandora's Box of what might constitute irreparable harm and allow injunctions in myriad new contexts.

Two, the district court's analysis ignores *Winter*. The district court never concluded Appellees are likely to get COVID-19. But a "clear showing" of "likely"

19

is the standard. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). "Likely" means "having a high probability of occurring or being true" or "very probable." *Likely*, Merriam-Webster (2021), https://tinyurl.com/3rxz7k38. The Supreme Court has explicitly said the "possibility" of harm (even an irreparable one) is not enough. *Winter*, 555 U.S. at 22.

Nothing supports the conclusion that Appellees are "very probable" to contract COVID-19, much less suffer a severe outcome if they do. No data—from the CDC, from DHEC, or anywhere else—lets Appellees meet this high standard. In fact, the data prove they can't meet it. The data show that children generally have been remarkably resilient through this pandemic. Of course, even one child's death is tragic (and Appellees' suggestion below that the Governor is playing "Russian roulette with their children's lives" is, to put it mildly, misplaced hyperbole), but the numbers show that children are highly likely to recover if they contract COVID-19. *See County-Level Data for COVID-19*, S.C. Dep't Health & Envtl. Control, https://tinyurl.com/ac62h5hw (last accessed Sept. 29, 2021). Appellees offered nothing in the district court to suggest these low rates for severe outcomes or death are substantially higher for any children with disabilities, much less that such children are "likely" to have such a bad outcome. *See* App.66-67.

Even with the recent but subsiding surge of COVID-19 cases that Appellees say is the reason they filed this lawsuit, it is still not "likely" that Appellees or any

particular person will contract COVID-19. Appellees proved this point below, when in their reply brief on the preliminary-injunction motion, they admitted that this surge has infected less than 1 percent of the State's student population. *See* ECF 70, at 24. Even if that number has grown since that filing, the percentage of students who have contracted COVID-19 is still low.

*Third*, the public interest favors a stay. Injecting the judiciary into the debate on mask mandates undermines public confidence in the courts. The debate over masks in schools has been ongoing for months. People have lobbied elected officials to impose mask mandates, to permit mask mandates, and to prohibit mask mandates. Thus far, Appellees' views have not prevailed in that debate in South Carolina. But instead of redoubling their efforts, they ran to the courthouse. Concocting novel legal theories is not a proper backup plan to failed efforts to persuade those elected to represent their interest in the General Assembly. The courts are supposed to be the "least dangerous" branch. *The Federalist No. 78*, p. 464 (Hamilton) (C. Rossiter & C. Kelser eds. 2003). Sanctioning Appellees' "legislating by litigating" strategy, particularly with their implausible claims, would present significant federalism and separation-of-powers concerns.

## **CONCLUSION**

For the foregoing reasons, the Court should grant an administrative stay while it decides this Motion and grant a stay pending appeal.

21

Respectfully submitted,

s/Wm. Grayson Lambert
Thomas A. Limehouse, Jr.
*Chief Legal Counsel*
Wm. Grayson Lambert
*Senior Legal Counsel*
Michael G. Shedd
*Deputy Legal Counsel*
OFFICE OF THE GOVERNOR
South Carolina State House
1100 Gervais Street
Columbia, South Carolina 29201
(803) 734-2100
tlimehouse@governor.sc.gov
glambert@governor.sc.gov
mshedd@governor.sc.gov

*Counsel for Governor Henry McMaster*

Alan Wilson
*Attorney General*
Robert D. Cook
*Solicitor General*
J. Emory Smith, Jr.
*Deputy Solicitor General*
OFFICE OF THE ATTORNEY GENERAL
P.O. Box 11549
Columbia, South Carolina 29211
(803) 734-3680
rcook@scag.gov
esmith@scag.gov

*Counsel for Attorney General Alan Wilson*